HUGH COCHRANE and another *vs.* ANTHONY P. HALSEY.

May 10, 1878.

**Trial by Referee—Motion for New Trial after Judgment.**—A motion to vacate
the report of a referee, and for a new trial, for errors of law committed
during the trial, and for insufficiency of evidence, may be made on a
case settled after the entry of judgment, when the report has been made
and filed, and judgment has been entered without notice, and when the
party making the motion has been guilty of no laches or unreasonable
delay in settling the case, and making the motion. When in such a
case a report is vacated, and a new trial is granted, the court may also
set aside the judgment to give effectiveness to its decision.

**Same—Findings not responsive to Issues.**—A judgment upon findings of fact,
not responsive to the issues, cannot be sustained against an objection
properly and timely taken. The findings in this case considered and
held irresponsive and insufficient.

**Same—Judgment vacated in part.**—When a judgment, entered upon a
report of a referee which is vacated, embraces, under the stipulation of
the parties, matters not affected by the report or the order vacating
it, it may be allowed to stand as to such matters, though set aside as to
the rest.

The plaintiffs Hugh Cochrane and Carson N. Cosgrove
brought this action, in June, 1876, in the district court for
Le Sueur county, against the defendant, for the purpose of
obtaining a dissolution and winding-up of the affairs of the
firm of Cochrane, Cosgrove & Halsey, composed of themselves
and the defendant, and the appointment of a receiver, etc.

In their complaint, they allege that prior to and on Decem-
ber 9, 1875, they had been and then were copartners under
the name of Cochrane & Cosgrove, as general traders, at Le
Sueur, and that, on that day, a new partnership was formed
between themselves and the defendant, upon the terms that
the defendant should put in as capital the sum of $8,000,
and be an equal partner with each of the plaintiffs; that the
old business was to be continued under the new name, de-
fendant having an one-third interest in all the assets of the
firm of Cochrane & Cosgrove, but the new firm was not to

assume any of the liabilities of the old; that the defendant paid in the $8,000, as agreed, and the business went on until May 17, 1876, when, pending arrangements for a dissolution of the new firm, creditors of the old firm levied on plaintiffs' interest in the new, with the result of breaking up the business.

The complaint further states that the defendant claims that the plaintiffs deceived him as to their pecuniary condition when he entered the firm, but that in point of fact they dealt honestly with him, but were themselves mistaken as to the true market value of their real and personal property, and overestimated it, in good faith. That the debts of the old firm amount to $20,855, part of which are past due; that the value of plaintiffs' property, outside of their interest in the new firm, is $5,762.77, in which is included a balance of $3,387.77, due from the new to the old firm; that the value of the assets of the new firm is $27,194.81, and its debts amount to more than $16,200, in which is included the balance of $3,387.77, due from the new to the old firm; that plaintiffs have no other property subject to execution, nor has the defendant, except a house and lot of the value of $600; that the defendant is indebted severally to an amount exceeding $3,000, besides an indebtedness of $900, due from him to the new firm. The complaint also sets forth the origin, history and effects of the dissension between the defendant and his copartners, the plaintiffs.

The defendant, in his answer, alleges as a counterclaim that on December 9, 1875, the plaintiffs proposed to sell to defendant, who was a stranger at Le Sueur, an one-third interest in their stock in trade, and to form with him a new partnership for continuing their business of general traders at that place, for and in consideration of $8,021.18, to be paid them by defendant; and that at the time of making this proposal, and to induce defendant to accept it, they represented to him that they "had been theretofore and were then doing a good, prosperous and profitable business in said town

as general traders, and that they were entirely solvent and able to pay all their debts and obligations of every nature and kind in full, and that the said sum of $8,021.18 was more than sufficient to pay and discharge all their debts and obligations in full;" and that defendant made the purchase, entered into the partnership, and paid the consideration, relying on these statements, and continued to believe them so long as the new firm continued in business, and until about May 20, 1876, during all which time the new firm did a profitable and paying business, with profits largely in excess of its expenses and losses, and that there were no material or considerable losses in the business; and that "the said representations of the plaintiffs were, at the time they were made to this defendant as aforesaid, not true, but false, and were then and there well known to said plaintiffs to be false; and that the plaintiffs were not then solvent and able to pay all their debts and obligations in full; but, on the contrary thereof, the plaintiffs then and there were wholly insolvent, and unable to pay their debts and obligations in full, and well knew that they were wholly insolvent and unable to pay their debts and obligations in full; and that the sum of $8,021.18 was not then sufficient to pay and discharge all the debts and obligations of the plaintiffs, and so the plaintiffs then and there well knew; but, on the contrary thereof, the indebtedness of the plaintiffs then and there amounted to a much greater sum than $8,021.18, to wit, to about $25,000, and so the plaintiffs then and there well knew; and that the plaintiffs made the said false representations to the defendant, as aforesaid, for the purpose and with intent of deceiving him, and inducing him to make said purchase, and to form said copartnership, and to pay over to them said money, and thereby of defrauding and injuring him; and that, by said false representations, he was deceived and induced to make said purchase," etc., and that as soon as the falsity of such representations became known to him, about May 20, 1876, he refused longer to continue the copartner-

ship. The defendant further alleges that, besides the injury to his credit and in other regards, he has suffered damage, by reason of the premises, in the sum of $8.021.18, with interest thereon from December 9, 1875, and he prays that the contract of partnership and sale, between himself and the plaintiffs, be decreed to be void from the beginning; that the property of the firm be converted into money; that its just debts be ascertained and determined, and paid out of such money; and that after such debts are paid, the defendant be repaid the said sum of $8,021.18, with interest, out of the remainder of such money; and that he have a first lien thereon for such payment; and that, after these payments are made, the remainder of such money, if any, be paid to the plaintiffs; and for general relief. The allegations of the answer were put in issue by the reply.

By consent of parties the partnership was dissolved and a receiver appointed, and the action tried by a referee, whose findings of fact were in substance as follows:

For four years prior to December 7, 1875, the plaintiffs had been, and on that day were, residents of Le Sueur, and partners as general traders and dealers in agricultural implements, at that place. The defendant resided at Minneapolis, and was a stranger to Le Sueur and to plaintiffs' business there. On November 20, 1875, at Minneapolis, the plaintiff Cosgrove proposed to defendant to sell him an interest in plaintiffs' business at Le Sueur. Afterwards, and in the same month, the defendant being at Le Suéur, Cosgrove, in answer to a request of defendant, and with Cochrane's knowledge and consent, proposed to defendant that plaintiffs' stock should be invoiced at cost, with what was right for freight added; that defendant should pay one-third of this amount to plaintiffs, and thereupon become an equal one-third partner with them in their business; and Cosgrove then and there represented to defendant that plaintiffs' business was worth a bonus, and that defendant ought to pay a bonus of $4,000 or $5,000 for the privilege of purchasing such one-third interest, and that the

firm of Cochrane & Cosgrove was doing a good business. These representations created a confidence in defendant as to the plaintiffs' financial standing which neither of them did any-thing to remove, and which continued to exist in his mind during all the negotiations. On December 7, 1875, the defendant, relying on Cosgrove's representations, and on plaintiffs' silence as to their financial standing, accepted Cos-grove's proposition, and bought an one-third interest in plain-tiffs' stock and business, the price being arrived at by taking an inventory of their stock and fixtures, at the cost price, amounting to $23,063.54, and adding $1,000 for freight, making $24,063.54, one-third of which, being $8,021.18, was paid by defendant to plaintiffs, on December 9, 1875. The amount of the inventory thus agreed on by the parties as the value of the goods was more than their wholesale value at the time they were inventoried. It was agreed that the new partnership should not be liable for the debts of the old.

At the time of the proposition to defendant, and down to his purchase and payment, the firm of Cochrane & Cosgrove was insolvent, and the plaintiffs knew that it was insolvent. At no time prior to the sale to defendant did either of the plaintiffs state to the defendant the amount of their partner-ship indebtedness, nor offer him their books for inspection. Nothing was said by either of the plaintiffs to the defendant as to their indebtedness, financial condition, solvency or liabili-ties, nor did they ever represent to the defendant that the sum of $8,021.18 was more than sufficient to pay their debts. The defendant never inquired as to the amount of plaintiffs' indebtedness, nor asked to see their books, and was ignorant of their insolvency. The entire assets of the partnership, and of the partners, at the time of the sale to defendant, amounted to not more than $43,063.54, (taking the stock at the inven-tory price,) and their indebtedness, (including the individual debts of the partners,) to not less than $41,000, of which amount the sum of not less than $26,650 was due and owing

by the partnership for merchandise bought prior to December 9, 1875.

The 22nd finding (referred to in the opinion) is that the business of Cochrane & Cosgrove was not at any time between November 15, 1875, and December 9, 1875, worth a bonus of $4,000 or $5,000, or any bonus at all, and that the representation of Cosgrove in that regard was in point of fact untrue to Cosgrove's knowledge.

As conclusions of law, the referee found that the insolvency of Cochrane & Cosgrove was a material fact, which ought to have been disclosed to defendant during the negotiations for the sale to him of an interest in the stock, and the formation of the new partnership; and the plaintiffs' omission to make such disclosure was, in law, a fraud upon defendant; and the latter's omission to make inqury of plaintiffs as to their financial condition did not relieve them from the duty of disclosing their condition to him; that the fact that plaintiffs were indebted in the sum of $26,650 for merchandise, with a stock on hand and fixtures worth at cost price but $24,063.54, taken in connection with plaintiffs' resources, was a material fact that ought to have been disclosed; and the omission to disclose the amount of their indebtedness for merchandise was, in law, a fraud on defendant; and his omission to make inquiry was not such negligence as will preclude him from recovering in this action. The referee further found that as Cosgrove's representations had created a confidence in Halsey, the plaintiffs were bound to destroy that confidence, by a statement of the facts in regard to their financial standing, before making the sale and the new partnership; and the making of these representations by Cosgrove, and the omission of plaintiffs to disclose their actual financial condition, was, in law, a fraud on defendant, who had a right to rely on Cosgrove's representations and plaintiffs' silence as to their financial condition; that such silence was, in law, tantamount to an affirmation of solvency, and that the defendant was defrauded by reason of such representations and silence,

and was entitled to judgment declaring the copartnership of Cochrane, Cosgrove & Halsey void from the beginning, and restoring to him the amount paid for the one-third interest in the property of the old firm bought by him, less the amount found by the referee to be due from him to the new firm at the time this action was commenced.

The referee's report was filed October 28, 1876, and on the same day judgment was entered in accordance therewith, and without notice to the plaintiffs. Notice of the judgment was served on their attorney on November 6, 1876, and he proceeded to make a case, which, with the amendments of the defendant, was submitted to the referee and settled by him on February 28, 1877, the time having been enlarged by stipulation. On March 24, 1877, the plaintiffs served notice of motion for a new trial. The motion was heard before *Macdonald*, J., and an order was made granting the motion, and setting aside so much of the judgment as declared the contract of copartnership between plaintiffs and defendant to be void from the beginning, and adjudged a recovery by defendant against plaintiffs, and directed the receiver to pay such amount to defendant with the costs. From this order the defendant appealed.

*Allis & Allis*, for appellant.

Where there is fraud or imposition in an agreement for partnership, equity will declare it utterly void *ab initio*, and restore the injured party to his original condition, so far as practicable. Story Partnership, §§ 172, 232, 285. The absence of entire good faith on the part of either partner in the formation of the partnership will render it void from the beginning. Id. § 6. In the formation of a partnership the law exacts from the parties the utmost good faith and fair dealing toward each other. It tolerates no concealment. In such cases silence as to a material fact is equivalent to a direct affirmation. That the plaintiffs' silence as to their financial condition was studied and intentional is evident from the fact that though they may have been misled as to the

value of their assets, they could not have been ignorant that they owed for their merchandise alone not less than $26,650 (more than it was worth) besides their other indebtedness, and this was entered on their books and was well known to them. It is perfectly obvious that this fact alone, if it had been mentioned or had become known during the negotiations, would have at once put an end to them, and the plaintiffs, as business men, must have known this. Yet they remained silent, and withheld all information as to this and all other matters affecting their indebtedness. Their silence, therefore, was a meditated silence, and as it respected the most material of all facts, it was under the circumstances in all respects equivalent to a direct affirmation of their solvency. That defendant was misled by their conduct and believed them to be solvent, and acted on the belief thus induced, is conclusively shown by the result of the negotiations; for it is incredible that a man entirely solvent should form a copartnership, paying a large sum for his interest therein, with persons who were entirely insolvent. No prudent man would have entertained for an instant a proposition to enter into a partnership in trade with persons in plaintiffs' condition—insolvent, if he knew of their insolvency. This very negotiation with the defendant was therefore, in itself, an affirmation of their solvency; they were holding themselves out to the defendant as solvent and in good financial condition. It was not a case of mere *suppressio veri,* but involved a *suggestio falsi.* 1 Story Eq. Jur. §§ 188–223, 310–324; 2 Kent, 482–484; *Smith* v. *Bank of Scotland,* 1 Dow Parl. Rep. 294; *Wilde* v. *Gibson,* 1 H. L. Cas. 605; *Pidcock* v. *Bishop,* 3 B. & C. 605; *Linderman* v. *Desborough,* 8 B. & C. 590; *Tattersall* v. *Groote,* 2 Bos. & Pul. 131; *Martin* v. *Morgan,* 1 Brod. & Bing. 289; *Hamell* v. *Stokes,* 4 Price (Exch.) 161; *Colt* v. *Woolaston,* 2 P. Wms. 154; *Pearson* v. *Morgan,* 2 Bro. Ch. Cas. 390; *Green* v. *Barrett,* 1 Sim. 45; *Etting* v. *Bank of U. S.,* 11 Wheat. 68; *Smith* v. *Richards,* 13 Pet. 26; *Warren* v. *Daniels,* 1 Woodb. & Min. 103; *Smith* v. *Babcock,* 2 Woodb.

& Min. 246; *Fogg* v. *Johnston*, 27 Ala. (N. s.) 432; *Story* v. *Norwich*, 24 Conn. 94; *Allen* v. *Addington*, 7 Wend. 9, s. o. 11 Wend. 374; *Johnson* v. *Monell*, 2 Keyes, 655; *Durrell* v. *Haley*, 1 Paige, 492; *Lupin* v. *Marie*, 2 Paige, 169; *Rawdon* v. *Blatchford*, 1 Sandf. Ch. 344; *Hill* v. *Brower*, 76 N. C. 124.

*W. P. Warner*, for respondents.

CORNELL, J. The report of the referee was made and filed, and judgment was entered thereon immediately, on the 18th day of October, 1876, without any notice to the party adversely affected by it. The first notice or knowledge the plaintiffs' attorney had of the report or judgment, was about November 6th, following. He, thereupon, forthwith took the necessary steps for obtaining a new trial for insufficiency in the evidence, and errors of law occurring at the trial. A case was made and served, and also amendments, both under stipulations granting time, and upon its settlement, a motion, pursuant to notice, was made thereon, and upon the record and files in the action, and an affidavit of the foregoing facts, for an order of the district court vacating the report and judgment, and granting a new trial of the issues, upon the grounds specified in the notice of motion. At the hearing the preliminary objection was made that the court could not entertain the motion, because the errors complained of all occurred prior to the entry of judgment, after which, it is claimed, no motion for a new trial on such grounds can be made and heard.

For causes like those upon which the plaintiffs herein base their application for a new trial, the statute expressly authorizes the vacation of the report of a referee, and the granting of a new trial, on motion, to be made upon a settled case, showing the errors complained of. Gen. St. c. 66, tit. 20. That it was the intention of the statute to give to every aggrieved party the right to make such an application, and to be heard thereon, can hardly be questioned. Whenever, therefore, through no fault of his, a party has had no opportunity to exercise this right before judgment, by reason of its immedi-

ate entry upon a report of which he has no notice or knowledge, he may do so afterwards, if guilty of no unreasonable delay or laches in procuring a settlement of his case, and making his motion. *Conklin* v. *Hinds*, 16 Minn. 457; *Schuek* v. *Hagar*, 24 Minn. 339. If, upon the hearing of the motion, the court becomes satisfied that the report ought to be vacated, it may also set aside the judgment, to give effectiveness to its decision. *Minn. Valley R. Co.* v. *Doran*, 15 Minn. 240. The facts of plaintiffs' case bring it clearly within this rule, and the court below committed no error in entertaining their motion for a new trial.

The issues which the referee was called upon to determine related to certain false representations, which are alleged to have been fraudulently made by the plaintiffs, with the intent of deceiving the defendant, whereby the latter was induced to enter into the contract of copartnership which he now seeks, for that reason, to have declared void *ab initio*. In order to sustain the report and its findings, therefore, it must appear that they are substantially responsive to these issues, for proofs, without proper and corresponding allegations in the pleadings for their support, can never be made the foundation of a judgment, against an objection properly taken and timely interposed. *Finley* v. *Quirk*, 9 Minn. 179 (194.) Under this rule, where an action is founded upon actual fraud, a party will not be permitted to recover upon proof merely of a constructive fraud. *Eyre* v. *Potter*, 15 How. 42. For the same reason, no recovery can be had in an action for false representations fraudulently made in respect to the existence of material facts, upon proof of fraudulent concealments in reference to other facts, which ought to have been disclosed.

The grounds of defendant's cause of action, as stated in the counterclaim contained in his answer, are the alleged false representations, (1) that the plaintiffs had been theretofore, and were then, doing a good, prosperous and profitable business, as general traders; (2) that they were entirely solvent, and able to pay all their debts and obligations, of every

nature and kind, in full; and (3) that the sum of $8,021.18, which the defendant was to pay for a one-third interest in the firm, was more than sufficient to pay and discharge all their debts and obligations in full.  Believing and relying upon the truth of these representations, it is alleged that the defendant was induced to, and did, enter into the partnership.  The making of the last two of these representations is expressly negatived by the findings, in which it is found that, prior to the formation of the copartnership, neither of the plaintiffs made any statements whatever to the defendant concerning their indebtedness, liabilities, financial standing, condition or solvency, or the sufficiency of said sum of $8,021.18 to pay and discharge their debts and obligations; and that the defendant made no inquiries in regard to any of such matters, nor did he ask to see their books of account, nor did the plaintiffs offer them for inspection.  In respect to the first of said alleged representations, the finding is in accordance with the admission in the reply, that plaintiffs represented simply that "they were doing a good business."  Whether this representation was true or false does not appear from any specific finding upon the point, although, perhaps, an inference may be drawn in reference to it from the twenty-second finding, which relates to another matter.  Conceding the fact of plaintiffs' insolvency as found, it is difficult to see how, upon these findings, the cause of action set out in the pleadings, can be sustained.  It rests alone upon the facts that plaintiffs were insolvent, and that they represented to defendant that they were doing a good business.  The falsity of this statement is not established, nor is the fact found that it was made for any fraudulent purpose.  Clearly, these were insufficient grounds upon which to avoid the contract.

In addition to the admitted representation, that "plaintiffs were doing a good business," the referee finds that in making the proposition to the defendant, in response to his request, they stated that their "said business was worth a bonus, and that he (Halsey) ought to pay a bonus of four or five thou-

sand dollars for the privilege of purchasing a one-third interest therein;" that these representations "created a confidence in Halsey as to their financial standing and condition," and that "relying on said representations, and upon their silence as to their financial standing, the defendant accepted said proposition," and entered into the agreement of copartnership. It is also found that "said business was not worth a bonus of four or five thousand dollars, or any sum or amount whatever, and said representation was untrue, as plaintiffs knew;" that they were actually insolvent, and did not disclose their insolvency to defendant, who was ignorant of the fact, and that he made no inquiries concerning it.

As conclusions of law from these facts, the referee finds that it was the duty of plaintiffs to have disclosed to defendant their insolvency, and that their omission so to do was a fraud, in law, upon defendant; that their silence as to the financial condition of their firm was tantamount, in law, to an affirmation of their solvency; and that their statements that the business was worth a bonus, etc., created a confidence in Halsey, which imposed upon them the obligation or duty of making a full disclosure of the real facts in regard to their financial standing, and their omission to do so operated as a fraud upon the defendant. Upon these grounds the referee adjudged the contract to be void from the beginning.

It will be observed that in none of these findings, nor in any part of the report, is it stated that the defendant believed in the plaintiffs' solvency, or that he acted upon such belief in forming the copartnership. The finding that "the representations made created a confidence as to their financial standing and condition," does not specifically indicate whether defendant believed such standing to be good or bad, only that he trusted in it, whatever it was. That he was ignorant of their insolvency does not necessarily imply a belief in their solvency, or that he acted upon such belief; neither does the fact that he credited the statement that "the business was worth a bonus," in any sum, imply such belief, for the truth

of the statement was not inconsistent with the fact of their insolvency. Unless this belief existed and was acted upon, it is evident that the fact of solvency or insolvency is unimportant as a ground for avoiding the contract. Moreover, the representation that "the business was worth a bonus of four or five thousand dollars, and that the defendant ought to pay that much for the privilege of purchasing an interest of one-third therein," is but an expression of opinion respecting the value of the business, made in the way of commendation, and upon which the defendant, in the exercise of ordinary prudence, had no right whatever to place any reliance, for no facts are disclosed showing the existence of any confidential relations between the parties, or the use of any artifice to lull the suspicions of the defendant to throw him off his guard. Kerr on Fraud, 83 *et seq*.

A further and fatal objection to the report and the legal conclusions therein stated is found in the fact that it is wholly irresponsive to the issues made by the pleadings. Defendant's cause of action, as stated in the answer, is not predicated upon the false representation "that the business was worth a bonus of four or five thousand dollars, and that defendant ought to pay that sum for the privilege of purchasing the interest" for which he was negotiating; nor upon the fact of plaintiffs' insolvency, and their fraudulent concealment of it from the defendant. As the report rests chiefly upon these two propositions, it is erroneous, and must be set aside. Although not necessary, it is not improper, in this connexion, to advert to the proposition incorporated by the referee in his conclusions of law, that "the silence of the plaintiffs in regard to the financial condition of said firm of Cochrane & Cosgrove, was, in the law, tantamount to an affirmation of their solvency." Silence may be taken as presumptive evidence of a fact, under circumstances imposing the duty of denying it, in case it does not exist; but we know of no such absolute rule as makes a mere omission to dis-

close insolvency equivalent, as a matter of law, to a direct affirmation of solvency. As the statement of a legal proposition, it is clearly incorrect; and if we regard it simply as a conclusion of fact, we are unable to discover anything, either in the findings or evidence, that authorized the defendant to draw from plaintiffs' silence any inference that they were solvent, and intended him so to understand. No inquiries concerning their solvency were made, and nothing was said or done by them to avoid inquiry, or that was justly calculated to mislead or divert attention from that fact. Kerr on Fraud, 108–9.

The question as to the power of a district court over the report of a referee, in respect to reviewing and correcting findings upon the evidence, need not be considered, as the findings themselves, in this case, are wholly insufficient to sustain the judgment entered thereon, and we do not understand defendant to object to the power of the court in this regard.

The point is made that the order of the district court is erroneous, inasmuch as it allows a portion of the judgment to stand. There is nothing in this point. It was only necessary to vacate the judgment, so far as it related to the issue that was tried by the referee, and as to which alone a new trial was granted. The rest of the judgment follows the stipulation of the parties, and is wholly unaffected by the order of the court vacating the report.

Order affirmed.