COLUMBIA ELECTRIC COMPANY *vs.* GEORGE E. DIXON.

July 1, 1891.

Contract with Corporation—Estoppel to deny Capacity to Contract.— The general rule that when a party contracts with a corporation, as such, he thereby recognizes its capacity to contract, and cannot afterwards deny it in that transaction, *held* applicable to the facts of this case.

Deceit in Sale of Stock — Representations of Value. — Certain alleged false and fraudulent representations as to the value, present and prospective, of the assets and stock of a corporation, *held* to be mere exaggerated expressions of value by the seller, upon which the buyer had no legal right to rely.

Action on Stock Subscription—Tender of Certificate.—It is no defence to an action on a subscription for stock that the corporation has not delivered or tendered the certificate of stock.

Appeal by defendant from an order of the district court for Ramsey county, *Otis*, J., presiding, striking out portions of his answer, alleging, among other things, false and fraudulent representations made by one Handy when obtaining from plaintiff a note of which the note in suit (for $750) is a renewal. These alleged representations were that the Acme Electric Co. (a Minnesota corporation) had bought and did own a patent electric lamp of great value, in the

manufacture and sale of which the corporation would speedily make large sums of money; that the corporation owned other valuable property worth $50,000, including property known as the "White Bear Electric Light Plant," which was worth $12,000; and that all the stock of the corporation was worth dollar for dollar because the paid-in capital would be $100,000, and $50,000 of it would be represented by $50,000 cash in the treasury as a working capital, and the $50,000 remaining was represented by other property outside the patents, and such other property was actually and intrinsically worth $50,000, and the stock, therefore, could never go below par; and that certificates of stock amounting to $1,000 had been issued to the defendant, and were attached to the defendant's note and kept in the bank with the note, to be delivered when the note was paid.

*Albert B. Ovitt*, for appellant.

*F. S. Kirkpatrick*, for respondent.

MITCHELL, J. This action was upon a promissory note executed by the defendant to the plaintiff corporation. The first defence was merely an allegation that the defendant was not a corporation. The substance of the second defence was that through the false and fraudulent representations of one Handy, representative of a corporation styled the "Acme Electric Company," as to the character and value, present and prospective, of the assets and stock of that corporation, the defendant was induced to subscribe to its stock, and to give his note therefor to that company; that subsequently the note now sued on was presented to the defendant, and represented to him to be for the amount which he owed the Acme Company, and that that company "had been reformed, and was now the 'Columbia Company;' and believing said representations, and relying on them, defendant executed said note, which is a renewal of the one given as aforesaid to said Handy for the Acme Company." This appeal is from an order striking out as immaterial the first defence and certain portions of the second.

1. The allegation that the plaintiff was not a corporation was clearly immaterial. The general rule is that when a party contracts with a corporation, as such, he thereby recognizes its capacity to contract, and cannot afterwards deny it in that transaction. Mor. Priv. Corp.

§ 751; Cook, Stocks, § 637; *Holbrook* v. *St. Paul Fire & Marine Ins. Co.*, 25 Minn. 229; *French* v. *Donohue*, 29 Minn. 111, (12 N. W. Rep. 354;) *East Norway Lake Church* v. *Froislie*, 37 Minn. 447, (35 N. W. Rep. 260;) *Minn. Gas-Light Economizer Co.* v. *Denslow, supra*, p. 171. This is the universal rule where third parties or strangers to the corporation contract with it in the transaction of the business for which it was organized; also in actions brought against subscribers to stock to collect subscriptions, either directly or indirectly, for the benefit of corporate creditors. The same rule seems to be generally adopted in actions between the corporation itself and those who subscribed for its stock after its organization, and after it had become an active, going concern. Cook, Stocks, § 185. This rule, of course, has no application to one who subscribes for stock previous to and in anticipation of the incorporation, and who has not by his subsequent acts acquiesced in the mode of incorporation. In such a case it is an implied condition of his contract of subscription that the proposed corporation shall be legally and regularly organized; and, if it is not, he may set it up as a defence to a suit on his subscription. But the allegations of the answer do not bring the defendant within this class of cases. Moreover, this would be an affirmative defence, which should be specially pleaded; and there is nothing in the answer even suggestive of such a defence. Evidently, what the defendant had in mind in denying plaintiff's corporate existence was its supposed incapacity to maintain any action because not a legal entity.

2. The other portions of the answer which were stricken out consisted, with one exception, of alleged representations of Handy as to the value, present and prospective, of the assets and stock of the Acme Electric Company. It is the first principle in defences of this kind that the false assertions or statements must be of matters of fact, and not of mere opinion or belief; of a present fact or condition, and not a prospect or expectation of the future. Without meaning to be understood that fraud may not, under certain circumstances, be predicated upon assertions of present value, yet it is very clear that all the matter that was stricken out of this answer comes strictly within the general rule, so often laid down, that every person

relies at his peril upon the assertions of the opposing contracting party as to the value of property. The assets and stock of this corporation were, from their very nature, largely speculative, the value of which, either present or prospective, could not be definitely fixed, but was largely a matter of conjecture, and would depend very much upon the value of certain patents, and the energy and ability with which the enterprise should be developed. Moreover, it nowhere appears but that the defendant himself had as much knowledge of the value of the corporate assets and of the condition of the corporation as Handy, or that he did not have ample apportunity to investigate all these matters personally. In fact, the presumption from their location is that he had. These alleged representations may all be classified as exaggerated expressions of the value of property made by the seller, upon which defendant had no legal right to rely; and, if he did so, he did it at his peril.

3. The other allegation which the court struck out was one to the effect that Handy falsely represented to the defendant that certificates of stock had been issued to him, and attached to his note in the bank, to be delivered when the note was paid. We understand this to refer to stock of the Acme Electric Company, and to the original note given for it. But this is not important, as the allegation is wholly immaterial, whatever it refers to. It is no defence to an action on a subscription for stock to allege that the corporation has not delivered or tendered to the subscriber the certificate of stock to which he is entitled. The certificate is not the stock itself, but only a convenient representative of it; and the party would be a full stockholder even if the certificate were never issued at all. Cook, Stocks, § 192. There is no allegation that the corporation has refused, or is not ready and willing, to deliver the certificate of stock when defendant pays his note.

Order affirmed.