## EDMOND ADAN v. HANNAH STEINBRECHER.[1]

December 1, 1911.

Nos. 17,344—(85).

**False representations respecting value.**

Though representations respecting the value of property, made by seller to purchaser, are not ordinarily representations of fact, upon which reliance may he had, there are exceptions to the rule; and the facts in this case are held to come within the exception, and that the evidence made the question one of fact for the jury.

**Evidence.**

The evidence sustains the verdict, and no reversible errors are presented by the record.

Action in the district court for Ramsey county to recover $30,-000 for fraudulent representations in the purchase of real property. The answer alleged that in consideration of the sum of $35,000 defendant conveyed real estate and certain personal property to plaintiff, for which he paid $20,000 in cash and made a mortgage for $15,000 for the balance. The case was tried before Olin B. Lewis, J., who, at the close of the evidence, denied defendant's motion for an instructed verdict in her favor, and a jury which returned a verdict in favor of plaintiff for $14,100. From an order denying defendant's motion to set aside the verdict and for a new trial, she appealed. Affirmed.

*Harry Weiss, S. J. Donnelly* and *T. D. O'Brien,* for appellant.
*Thomas C. Daggett,* for respondent.

BROWN, J.

Defendant was the owner of certain property situated on the shores of Bass Lake, near St. Paul, known as the Oakland Inn. It was equipped as a summer hotel, or country "roadhouse," and seems to have been patronized largely by people of questionable

[1] Reported in 133 N. W. 477.

repute. The entire property, land, buildings, stock, and furniture, was of the probable value of about $17,000. The business was conducted by defendant, through a manager, one Mayer, who appears from the evidence to have been a person of intelligence and of some force of character, in the presence, at least, of inferiors and subordinates.

Plaintiff is a gullible young man, whose chief occupation, according to his testimony, had been for many years prior to the time here in question that of playing the piano in resorts like that conducted by defendant, practically without education, and wholly inexperienced in business matters, and without knowledge of the value of the property of the character of the Oakland Inn. For some time prior to the completion of the transaction here involved he was a frequent visitor at the Inn, and was constantly more or less under the influence of intoxicants. He was acquainted with defendant, and had been an attendant at her other resort in the city of St. Paul. His acquaintance with Mayer, the manager of the Inn, had assumed an apparently friendly and confidential nature, and plaintiff seems to have been impressed with his character and business ability as manager of the place. In 1910 plaintiff received the sum of $40,000 as an inheritance from his mother's estate, a fact known to Mayer, which he proceeded to dispose of as rapidly as possible, principally in the delights and depressions of Oakland Inn.

Some time after the receipt of this money, plaintiff stated to Mayer that he thought some of starting in business, and intimated that he might go into the automobile trade. Mayer advised him not to do so, and stated that "I have something better for you." Plaintiff became interested, and was anxious to know about the opportunity Mayer had in store for him. Mayer put him off for a time, but finally suggested that plaintiff buy the Oakland Inn. It seemed a large proposition to plaintiff, and he was doubtful; but Mayer reassured him, and agreed to remain as manager if plaintiff should buy the place.

In the course of the negotiations, and, the jury was justified in finding, to induce plaintiff to make the purchase, Mayer represented

that the property was of the value of $35,000, and was a big paying proposition. In making the sale, Mayer was the agent and representative of defendant, and she was informed that negotiations for a sale to plaintiff were under way, and both well knew that the property was so offered at a greatly exaggerated price and far in excess of its real value. The buildings upon the premises were constructed by defendant, and Mayer superintended the work, and both were familiar with the actual cost of the same. There is evidence which fairly tends to show that during the negotiations Mayer was thoughtful of the danger of permitting plaintiff to make inquiries concerning the property, and he advised him to keep quiet about the matter; for, he said, if it should get out that the place was for sale, other purchasers would in all probability come and get the bargain away from plaintiff. The bartender learned that plaintiff was considering the matter, and he strongly urged an immediate purchase to keep others out. A lady visitor also advised the prompt closing of the bargain, for she contemplated taking the opportunity herself.

He finally concluded to buy, and agreed to pay the price demanded, $35,000, and testified that he was influenced to do so by the representations respecting the value of the property, which he accepted as true. A deed of the property was executed by defendant, and plaintiff thereupon paid her $20,000 in cash. The balance of the purchase price, $15,000, he secured by a mortgage, of which plaintiff subsequently paid something over $1,800. The transaction was closed and the papers delivered at defendant's place of business in St. Paul, and plaintiff returned to the Inn as sole proprietor. The liquor license soon expired, and its renewal was refused, owing, as we apprehend, to the character of the place. A fire destroyed part of the property, and the business wholly collapsed.

It may be further stated, as bearing upon the question of plaintiff's intelligence and business capacity, and the influence and control exercised over his conduct by Mayer, that subsequent to the sale, being anxious to retain Mayer as manager, plaintiff entered into a copartnership arrangement with him, by the terms of which plain-

tiff agreed to furnish all the capital necessary to carry on the business, and Mayer was to receive for his services as manager one-half the net income. Mayer had no interest in the property and had invested no money therein, and at the end of two weeks after plaintiff became the proprietor Mayer complained of being ill and expressed a desire to go to some health resort for recuperation. Plaintiff was loath to lose him, and communicated the facts to his bartender. The bartender in reply intimated that Mayer was not needed, that plaintiff ought to have all the proceeds of the business, instead of giving half thereof to Mayer, and that plaintiff had better "buy him out." Plaintiff gave the matter serious thought. He subsequently had another talk with Mayer, in which Mayer again stated that he ought to go away for awhile, and he, too, suggested to plaintiff, "You had better buy me out." This suggestion seems to have been timely, for plaintiff promptly bought him out, paying Mayer, $3,000, less a small deduction on account of bills contracted after the new management laid hold of the business.

This purchase of an interest that did not exist, and the payment therefor of $3,000, is a fair illustration of plaintiff's capacity, all of which was well known to Mayer, the manager and agent of defendant. Whether plaintiff also "bought out" his bartender does not appear from the record. But whether he did or not is not a controlling factor in the case, though it may be remarked, in passing, that if he did not, the record fairly justifies the conclusion that his failure to do so was because of a disinclination on the part of the bartender to relinquish his holdings, or his failure seasonably to intimate to plaintiff a willingness to sell.

Subsequent reflection led plaintiff to the opinion that he had been cheated and swindled, and he brought this action to recover damage therefor. He had a verdict below for $14,100, and defendant appealed from an order denying her alternative motion for judgment or a new trial.

1. The trial court submitted the case to the jury upon the theory that, unless the representations as to the value of the property were intended and understood by the parties as assertions of fact, there could be no recovery, even though the same were false, and

116 M.—12.

known to be false. The court permitted the jury to determine whether the representations were of fact, or mere expressions of opinion. The jury necessarily found the representations statements of fact, for there was no other basis, under the instructions, for a verdict for plaintiff. The question whether the court properly submitted this issue to the jury is presented by the request for an instructed verdict in defendant's favor at the close of the trial, which was denied, and exceptions taken. Whether the court erred in refusing that request presents the principal question on this appeal.

It is well settled that a representation as to the value of property offered for sale is not ordinarily one of fact, upon which may be predicated a charge of fraud. Smith, Law of Fraud, § 66. Such representations are treated generally as "dealer's talk," not arising to the dignity of an assertion of a fact, upon which reliance may be had. 20 Cyc. 51; Columbia Electric Co. v. Dixon, 46 Minn. 463, 49 N. W. 244. But the rule is founded upon the theory that the parties are dealing "at arm's length," and that each is afforded an equal opportunity of ascertaining the true value, and it has, like all general rules, its well-defined exceptions. Where it is clear, or reasonably so, that because of such a representation, and a reliance thereon, a palpable fraud has been perpetrated, the strict rule yields to the justice of the case and resolves the question into one of fact. 20 Cyc. 62; Leonard v. Springer, 197 Ill. 532, 64 N. E. 299; Coulter v. Minion, 139 Mich. 200, 102 N. W. 660; Stoll v. Wellborn (N. J. Eq.) 56 Atl. 894; Haygarth v. Wearing, L. R. 12 Eq. 320; Smith, Law of Fraud, § 68.

The evidence in the case at bar was ample to justify the conclusion that the parties were not dealing at arm's length; that plaintiff was wholly ignorant of the value of property; that by the improper influence exercised over him pending the negotiations by defendant's agent he was deprived of an opportunity to learn the truth; in short, the evidence is fairly conclusive that by the aid of the representation as to value he was wilfully cheated and defrauded. The trial court was therefore right in submitting to the jury the question whether the representations were intended and understood as as-

sertions of fact, and the inducement to the purchase by plaintiff. The evidence sustains the verdict.

2. The other assignments of error have been fully considered, and we discover no substantial basis for interference with the order denying a new trial. The damages are not excessive. The question whether a new trial should have been granted on the ground of newly discovered evidence, though made a part of the motion, is not presented by the assignments of error. There were no errors of sufficient importance to justify a new trial.

Order affirmed.