## MARGARET A. THORPE v. E. W. COOLEY.[1]

December 12, 1917.

No. 20,571.

**Bills and notes — waiver of fraud.**

1. Where notes are procured by fraud, the giving of renewal notes after discovery of the fraud is a waiver of the fraud.

**Pleading — relief.**

2. An issue not pleaded nor voluntarily litigated on the trial cannot be made the basis for relief.

**Fraud — statement of opinion not actionable.**

3. Defendant was a stockholder in a corporation, the success of which consisted in making sales of water from a spring which the corporation owned. The matter of financing the corporation had proved difficult and at a corporate meeting defendant made a motion for an issue of bonds. The motion was carried and the bonds issued. Statement by a representative of the corporation to defendant, to induce him to exchange stock for bonds and to renew notes given for the stock, that the bonds were good as gold, and that he could resell them, *held* a mere statement of opinion and not such misrepresentation of fact as to constitute actionable fraud.

**Same — relationship of parties — omission to disclose fact.**

4. There is no evidence of such relation between the parties that fraud can be predicated on nondisclosure of facts.

Action transferred to the district court for Hennepin county to recover $2,000 upon 4 promissory notes. The case was tried before Childress, J., who at the close of the testimony denied plaintiff's motion for

[1]Reported in 165 N. W. 265.

a directed verdict for the amount demanded,. and a jury which returned a verdict in favor of defendant. From an order denying her motion for judgment notwithstanding the verdict or for a new trial, plaintiff appealed. Reversed.

*Allen & Fletcher* and *John C. Benson,* for appellant.

*Leach & Leach,* for respondent.

HALLAM, J.

Action on four promissory notes of $500 each, made by defendant to himself and indorsed to plaintiff. Defendant claimed the notes were procured by fraud. Plaintiff denied fraud and alleged she was a bona fide purchaser without notice. Defendant denied this. The jury found for defendant.

On June 8, 1911, the Hiawatha Water Company owned about 30 acres of land near Janesville, Wisconsin, on which was a spring. Some buildings had been erected thereon. The property was not of great value save as the spring was valuable. The company was formed for the purpose of bottling and selling water from this spring. To do this it was thought the expenditure of a large sum for advertising and promotion was required. The corporation was capitalized for $1,250,000 and the stock put on sale. Plaintiff was a doctor at Blooming Prairie, Minnesota. One Campbell, an agent selling the stock of the company, asked defendant to buy. On June 8, 1911, defendant agreed to invest $2,500 in stock and gave therefor five notes of $500 each due in six months. Those in charge of the corporation conceived the notion, popular in some quarters, that real wealth could be amassed by watering the stock and selling six dollars of stock for one dollar in money. Defendant was not averse to this method of finance and it was agreed that he should receive stock of the par value of six times his investment. Defendant paid one note and had the others renewed from time to time until March 26, 1913. At that time Thomas Peebles, who was connected with the company in some way, made demand for payment of the notes. At Peebles' suggestion defendant went to Minneapolis to see him. While there, defendant gave the notes in suit in renewal of his former notes and at the same time exchanged his right to receive stock for a right

to receive, at par, bonds which the company had issued secured by a trust deed of its property.

The defense charges fraud committed by Campbell in procuring defendant to buy the stock and give his notes on June 8, 1911, and fraud by Peebles in procuring the renewal notes on March 26, 1913. We may assume that plaintiff was chargeable with notice of every fact in this whole transaction. The difficulty we have is in finding the existence of fraud that will avoid these renewal notes.

1. There is evidence that some misrepresentation was made to induce defendant to make the original purchase of stock and to give the original notes. The fact is, however, after he made the original purchase of stock defendant went to Janesville and investigated fully and also participated in corporate meetings. After returning from Janesville he wrote that he would soon pay his notes, and as above stated, did pay one and secured extension of the others.

It is clear that at the time defendant gave the new notes in 1913 he had full knowledge of the truth or falsity of all representations which he claims in his answer were made to him when he bought his stock and gave the first notes in 1911. All these he waived by giving the new notes. 7 Cyc. 881; 8 C. J. 445; 1 Daniel, Neg. Inst. (6th ed.) 302; Long v. Johnson, 15 Ind. App. 498, 44 N. E. 552; Brown v. First Nat. Bank, 115 Ind. 572, 18 N. E. 56; Sawyer v. Wiswell, 9 Allen, 39; Keyes v. Mann, 63 Iowa, 560, 19 N. W. 666; Calvin v. Sterritt, 41 Kan. 215, 21 Pac. 103.

Defendant claims on this appeal that there was one misrepresentation, the falsity of which he had not discovered when he gave the renewal notes, namely, there was a statement in a prospectus handed to him by Campbell that the title to all assets of the company was "free and clear." It appears there was some incumbrance upon the land. No such misrepresentation was alleged in the answer. Defendant in his amended answer alleged the acts of fraud, upon which he relied, in much detail. He did not mention this. The existence of a purchase money mortgage on the land came out in the course of a deposition taken a year and a half before the trial. Yet he never asked leave to amend to set up this statement in the prospectus as a fraud. Nor was this

138 M—28

issue voluntàrily litigated on the trial. Defendant in his defense in chief made no pretense of proof of facts necessary to relief on the ground of this representation. There was no suggestion that he had been deceived in this particular. Not until his surrebuttal was he asked anything about these mortgages and then only as pertaining to another point in the case. Clearly on this record defendant's notes cannot be avoided on this ground.

3. The other alleged fraud is that at the time defendant gave the renewal notes sued on and exchanged his stock for bonds, Peebles stated to him that the bonds were "good as gold" and that he would sell them and relieve defendant of his responsibility before the notes were due. Defendant claims these representations untrue. There is no claim that the bonds were worth less than the stock. Clearly they must have been worth more. Defendant knew of the bond issue before this. He had been present at a stockholders' meeting at which the stockholders "went over the matter very thoroughly." The tenor of the discussion at the meeting was that the selling of stock had been a failure and that the only way to complete the financing of the company was to issue and sell bonds. Defendant himself made the motion that the issue of bonds be made. There was no relation of confidence between these parties. Both were experienced men. Neither had means of information not open to the other. The facts which gave value to the bonds were known to both or were open to both. The fact is, both these parties were embarked in an' enterprise known by them to be speculative. It was a patent fact that the value of stock and bonds of the company depended on their financing the enterprise and making successful sales of spring water. Under all the circumstances, the purported statement of Peebles that the bonds were "good as gold," and that he could sell them before defendant's notes fell due must be taken as a mere opinion as to value and not as a representation of fact. Such statements do not constitute actionable fraud. Cochrane v. Halsey, 25 Minn. 52, 64; Columbia Electric Co. v. Dixon, 46 Minn. 463, 49 N. W. 244; Kimber v. Young, 137 Fed. 744, 70 C. C. A. 178. The case is not within the decision of Adan

v. Steinbrecher, 116 Minn. 174, 133 N. W. 477 or Ludowese v. Amidon, 124 Minn. 288, 144 N. W. 965.

4. Some claim is made that Peebles should have disclosed the existence of certain mortgages that were on the land when the renewal notes were given. We think that there is no evidence of any such confidential relation between these parties that fraud can be predicated on nondisclosure of facts.

We think the court should have directed a verdict for the plaintiff. So ordered.

Order reversed. ————————