# HENRY A. FOLLINGSTAD v. MARTIN O. SYVERSON AND OTHERS.[1]

April 1, 1926.

No. 25,040.

**Evidence insufficient to show actionable fraud.**
Evidence that the defendants, vendors of farm land, made untrue representations to the plaintiff, the vendee, that certain land and the buildings thereon were of a stated value and that the land was good farming land, the parties standing on an equal footing, and the vendee being a successful farmer who had lived in the immediate vicinity of the land for practically all his life and who had an unrestricted opportunity to examine it, *held* not to show actionable fraud.

Frand 26 C. J. p. 1201 n. 21; p. 1216 n. 86; p. 1217 n. 90; 27 C. J. p. 68 n. 25.

See note in 37 L. R. A. 593; 12 R. C. L. p. 359 et seq.; 2 R. C. L. Supp. p. 1420; 4 R. C. L. Supp. p. 755.

After the former appeal reported in 160 Minn. 307, 200 N. W. 90, the case was tried before Johnson, J., and a jury which returned a verdict in favor of plaintiff. Defendants appealed from an order denying their motion for judgment notwithstanding the verdict or for a new trial. Reversed.

*Thomas Mohn*, for appellants.

*A. J. Rockne*, for respondent.

Dibell, J.

Action to recover damages for fraudulent representations alleged to have been made by the defendants upon the sale of land to the plaintiff. There was a verdict for the plaintiff for $10,000. The defendants appeal from the order denying their alternative motion for judgment notwithstanding the verdict or a new trial.

[1]Reported in 208 N. W. 200.

The case was here in 160 Minn. 307, 200 N. W. 90, and injunctive relief given the plaintiff.

On April 19, 1920, the defendants sold the plaintiff 50 acres of farm land just outside of the village of Wanamingo, in Goodhue county, for $23,000, or $460 per acre, of which $6,000 was paid in cash, $5,000 was to be paid on November 1, 1920, and the balance on January 1, 1921. The plaintiff was to have possession on November 1, 1920, and took possession just shortly before that time. This action was brought in January, 1924, and tried in December of the same year.

About April 10, 1920, the plaintiff interviewed Martin O. Syverson, one of the defendants, with a view to purchasing a part of a farm of 137½ acres, known as the Naeseth farm, just outside of Wanamingo, owned by him and two of his codefendants. He was the only one of the defendants with whom the plaintiff talked; and the representations were made by him. The plaintiff's testimony is this:

"Q. When did you first have any talk with anyone with reference to this farm you are now on? A. About—around the 10th of April.

"Q. Where did you have that talk? A. In the hardware store of Syverson Brothers, Wanamingo.

"The Court: The 10th of April what year? A. 1920.

"Q. And who was present when you had that talk? A. Martin Syverson and several customers when I started to talk.

"Q. You may tell what was said. A. I asked him what—

"Q. This was Martin Syverson? A. Martin Syverson. I was trading with him, buying some hardware, and I asked him if they wanted to sell that piece of the Naeseth farm south of the road and I asked him how much of it he would sell and he said there were others that owned the land too and he didn't know just how much they could sell. Then he motioned me to follow him and we went upstairs in the hardware store.

"Q. When you came up there was there anyone present? A. There was no one present.

"Q. Just you and Martin Syverson alone? A. Yes, sir.

"Q. You may tell us what happened up there. A. I asked him how much he wanted for that piece of land. He said, 'That land is worth $500.00 an acre. The buildings on that place is worth $10,000.00. You couldn't build them for that.' I said to him, 'You will never get that price.' Then he said, 'We have other farms for sale. We have a farm north of Wanamingo of 80 acres.' The price on that was $250.00. I said, 'Well, I couldn't use any place without buildings.'

"Q. There was no building on this place north of Wanamingo? A. No, there wasn't.

"Q. Was that all that was said there that day? Was anything more said? A. Yes, he said, 'I thought you was going to be on the home place. I thought you had bought that place. I said I had only rented it and couldn't stay there more than that year.

"Q. Have you now told about all said there that day? A. I think about all.

"Q. When did you next see anyone with reference to this farm? A. I was down at the depot in Wanamingo.

"Q. When was that about? A. That was some time afterwards.

"Q. And who did you see then? A. Martin Syverson.

"Q. When you say Martin Syverson, that is one of the defendants in this case? A. Yes.

"Q. Anyone present at this talk? A. There was several there waiting for the train but there was no one heard our conversation. He sat down beside me and he said, 'We have other farms for sale. We have a farm in Minneola township,'—I think he said, and I told him I wouldn't move outside the township of Wanamingo.

"Q. And was that about all said there that time? A. That was all we talked about that time."

Later in the trial the plaintiff was called and this further testimony was given relative to what was said in the store:

"Q. You may state whether there was anything further than what you said this forenoon that was said by Mr. Syverson? [An objection was made and overruled.]

"The Court: You may answer the question.

"Q. You may state, Mr. Follingstad. A. What I mentioned this morning?

"Q. You know you gave some of the conversation this morning. As to whether anything further was said with reference to this farm, to location and so forth.

"The Court: Give him the date.

"Q. When you had the talk with Martin Syverson there in the store? A. No, sir.

"Q. Go on and state if there was anything omitted this morning with reference to what was said. A. He mentioned the value of the land and the value of the buildings and also stated the land was good farming land.

"Q. Did he say anything with reference to it being close to town? A. Good location."

These are the representations upon which the plaintiff relies, the statement as to the value of the land per acre, the value of the buildings, and that the land was good farming land.

The plaintiff was eager to buy. After his conversation with Syverson at the depot he talked with Halvorson, one of the Wanamingo bankers, about getting the land. We quote:

"Q. Where did you next have any transactions with reference to the farm? Who else did you see? A. The next man I saw was one of the bankers at Wanamingo, Martin Halvorson.

"Q. What, if anything, transpired? What did you do with him? A. I asked him if he could,—if he would ask the defendants if that land was for sale, and how much was for sale.

"Q. Ask him for you? A. Yes.

"Q. Ask if you could buy the 50 acres? A. Not the 50 acres—how much was for sale.

"Q. Did you see him again after that? A. Yes, I saw him again.

"Q. Then what did he reply to you? A. He said it was for sale but they wanted to keep back some of it."

There was no haggling about the price of the 50 acres. It was inserted in the contract by Halvorson—just how does not appear. The 50 acres were south of the road leading into Wanamingo. One Christlock bought the 60 acres north of the road at $300 at the same time. The defendants insisted on retaining the 10 acres east of the plaintiff's 50. The plaintiff had Halvorson try to get them to retain the corner, which contained a slough or swamp, but they insisted upon retaining a rectangular tract. The plaintiff knew of the slough. As bearing on his knowledge and his persistent desire to purchase we quote:

"Q. What did Mr. Martin Halvorson say to you? A. Well, he talked to me about that slough in the southeast corner.

"Q. Was there anything said as to whether the farm or what part of it could be had? A. There was.

"Q. Well, what was said? A. That part of it was for sale but they wanted to keep back some of it—ten acres.

"Q. Then as I understand it, this Naeseth farm was 60 acres on the south side of the road and the balance of it going to make up the 137½ acres was on the north side of the road. Isn't that the situation? A. Yes.

"Q. And of the 50 acres on the south side of the road you were informed that they wanted to retain 10 acres? A. Yes, sir.

"Q. Was that about all that was said between you and Mr. Halvorson at that time with reference to the farm? A. I asked him if we couldn't get him—that is, to keep back the corner instead of making a straight line along the east side.

"Q. And did you see Martin Halvorson again about that as to what would be done? A. Yes, sir.

"Q. What was later reported to you about that? A. That they would keep back 10 acres along the east side.

"Q. Yes, a straight 10 acres tract. Did you direct Mr. Martin Halvorson to do anything further? A. I directed him to find out about that corner.

"Q. Did you direct him as to coming to a final transaction or getting into a deal or what they would finally take? A. Yes, sir.

"Q. What was finally reported to you on that score? A. They wouldn't sell at that time because Christlock was buying on the north side and they were selling him 20 acres that he didn't want.

"Q. There was something with reference to selling some on the north side? A. Yes, sir.

"Q. When was it finally reported to you as to what they would do, and so forth? A. A short time before the contract was made.

"Q. And that was reported to you by Mr. Martin Halvorson? A. Yes, sir.

"Q. Who had seen them and then saw you? A. Yes, sir.

"Q. That is the way the transaction was afterwards carried on? A. Yes, sir."

The evidence is that the land was not worth near $460 an acre, and that the buildings were not worth near $10,000, and that some of the land was rocky and some wet or sloughy and not the best farming land. The defendants had bought it shortly before, that is, the whole farm of 137½ acres, at $262.50 per acre.

The plaintiff was an active and successful young farmer, 37 years old. He had been making money raising stock. He had lived in the immediate vicinity of the farm all of his lifetime, except for 2½ years. He had farmed 21 years within 2 or 3 miles. Wanamingo was his market town. He had been at the buildings on the farm at least once. He had seen the buildings from a distance "all my lifetime." The condition of the buildings and the character of the farm were open to observation. He must have been conversant to some extent with the character of lands around Wanamingo. The defendants did not urge him to buy. They suggested that he buy other property which they had for sale. When one farm was suggested he rejected it because there were no buildings; and when another was offered he said he would not leave the town of Wanamingo.

The sale was made in 1920, when inflated farm prices were at the peak. It is hard to understand now how values rose as they did; and probably it was just as hard for many people to understand then why prices did not represent permanent values. In the

sale of land some bragging and exaggeration by the vendor is permitted. They are expected, and do not deceive. The defendant, when $500 an acre was mentioned, retorted at once, "You will never get that price." Apparently he was not deceived. If exaggerated statements of value made in 1920, when prices were at the peak, could be made the basis of actionable fraud four years later, when values were readjusted, many an honest transaction could be avoided or damages based thereon recovered.

The holdings throughout are that representations as to value, when vendor and vendee are at arm's length, or loose expressions as to quality and character, afford no basis for a charge of fraud. Tretheway v. Hulett, 52 Minn. 448, 54 N. W. 486; Columbia Elec. Co. v. Dixon, 46 Minn. 463, 49 N. W. 244; Thorpe v. Cooley, 138 Minn. 431, 165 N. W. 265; Rogers v. Central L. & I. Co. 140 Minn. 295, 168 N. W. 16; Batchelder v. Stephenson, 150 Minn. 215, 184 N. W. 852. But from statements of value or quality, fraudulently made, where the vendee is in no position to ascertain value or quality, as where the property is distant, or where the representation is as to prices for which like property is sold, or where advantage is taken of a personal or confidential relation, actionable fraud may be found. Brown v. Andrews, 116 Minn. 150, 133 N. W. 568; Adam v. Steinbrecher, 116 Minn. 174, 133 N. W. 477; Ludowese v. Amidon, 124 Minn. 288, 144 N. W. 965; Schmidt v. Thompson, 140 Minn. 180, 167 N. W. 543. Such instances illustrate the fundamental principle that mere representations of value or quality, when vendor and vendee treat at arm's length, are not actionable. Going outside the state we note Barr v. Butler, 197 Iowa, 575, 195 N. W. 980, and Eckstein v. Storck, 199 Iowa, 1375, 203 N. W. 796, involving claims of fraudulent representations of value upon the sale of lands at a time of apparently inflated values.

There can be no recovery. The case has been fully presented. Litigation should be ended by the entry of judgment notwithstanding the verdict. Upon the going down of the remittitur judgment will be so entered.

Order reversed.