## JOSEPH HENRY JASMER v. HERMAN J. ENGELMANN AND ANOTHER.[1]

October 14, 1927.

No. 26,093.

**Evidence insufficient to sustain verdict because of defendant's fraud in exchange of property.**

The evidence *held* insufficient to sustain a verdict for the plaintiff in an action to recover for fraudulent representations in the exchange of land.

Exchange of Property, 23 C. J. p. 199 n. 60, 61; p. 240 n. 82.
Fraud, 27 C. J. p. 69 n. 26.

Defendant Engelmann appealed from an order of the district court for McLeod county, Tifft, J., denying his alternative motion for judgment or a new trial. Reversed.

*Sam G. Anderson,* for appellant.

*William O. McNelly* and *F. R. Allen,* for respondent.

HOLT, J.

Action to recover damages for fraudulent representations in the exchange of lands. There was a verdict for plaintiff for $3,860, and the defendant Engelmann appeals from the order denying his

[1]Reported in 215 N. W. 676.

alternative motion for judgment or a new trial. The defendant Miller does not appeal.

In August, 1924, the plaintiff was the owner of a partly improved farm of 140 acres in the cut-over lands in Cass county some eight miles from a railway station. It was subject to a $1,500 mortgage. He had personal property upon it variously estimated of the value of $1,500 or $2,000. He was anxious to leave the farm and engage in the restaurant business. In the early part of August he drove in his auto to Hutchinson, McLeod county, where he had lived when a young man. He was somewhat familiar with the county. His wife was there. He met the defendant Miller whom he had known there as a boy. On a Friday evening he engaged his services in securing a trade of his farm for a restaurant. It was understood between them that Miller would take Mrs. Jasmer the next day to New Prague, where Miller thought there was a restaurant which might be secured in trade, and the plaintiff proceeded to Pipestone on other business. The next day, Saturday, Miller took Mrs. Jasmer to Plato and looked over the property which was subsequently traded for the Cass county farm. Her brother was along and evidently not for an idle purpose. Engelmann and some of his family were along.

The evidence indicates that the property was looked over thoroughly, that they then went to a neighboring village where they had dinner, and returned and looked it over again. The property was a two-story brick building. Mrs. Jasmer testified but in no way complained that a thorough examination was not made. Her brother was not a witness. A tentative agreement for a trade was made, a lot in addition to the brick building being included. They returned to Hutchinson. On the evening of Sunday the plaintiff returned from Pipestone, met Miller and had some talk with him and with his wife. He knew that she had made some sort of a deal for a trade dependent upon Engelmann's being satisfied with the farm. Early the next morning the plaintiff, defendant and Miller started for Cass county. Until that day it does not appear that Engelmann had met the plaintiff. A trade was made, Engelmann

assuming the $1,500 mortgage on the Cass county farm, and Jasmer giving a $3,500 mortgage on the Plato property. The lot additional to the brick building was not included. The plaintiff took possession.

The plaintiff claims that the defendant represented the value of the Plato property to be $13,500, when it was not worth in excess of $3,500 or $4,000; that he represented it to be "located on the Yellowstone highway," that it "passed there," when it did not, although it ran past and connected with the village; that he represented the population to be 1,600, when it was not more than 250; that he represented that there was to be a high line construction through the village and that he would make great profits out of boarding the workmen; and that he represented that there were dances in the village two to four times a month from which he would derive $60 to $70 a night. These representations, if made, were made in Cass county.

Evidence as to all of these matters was received but only the representations of the value of the Plato property, the population of the village, and the location of the state trunk highway were submitted to the jury as grounds of recovery.

Plaintiff lived in McLeod county from his early youth until his early manhood and had a good general knowledge of the county. He seems to have been in about every village in the county except Plato. He was not unaccustomed to dealing in property and was able to take care of his interests. He dealt with Engelmann at arm's length. They were strangers. Miller was assuming to act as broker and get a commission from both sides. The plaintiff's claim of a confidential relation with Miller because he had known him many years before obviously fails.

The representation of value was a mere statement. There was no representation as to prior sales, or offers for this or like property, or of anything except present value. The plaintiff was not deprived of an opportunity to make an investigation. He told the defendants that he had not seen the property and would take their word for it. And while the representations were made in Cass county,

remote from the Plato property, his wife was his representative to look at it the Saturday before and he had conversed with her afterwards. The rule stated in Hoeft v. Raddatz, 170 Minn. 466, 212 N. W. 939, and other cases cited there, as to evidence of value, applies.

The evidence is altogether too unsatisfactory to justify the verdict returned. The evidence as to the prospects of business through the construction of the high line or through patronage in connection with village dances was improper, but the record does not make its reception error. The evidence of the representation of the highway is too indefinite to be the basis of such a verdict as was rendered. There should not be judgment notwithstanding. There should be a new trial.

Order denying a new trial reversed.

WILSON, C. J. (dissenting).

I dissent. The evidence to sustain the verdict may not be strong but in my judgment it is sufficient. Jasmer was never in Plato. He had not lived in McLeod county for over 14 years. The fact that he had previously lived in the county is stressed in the opinion. To one of his occupation this was not important. It in no way qualified him to pass upon the value of this village property in Plato which he had never seen. He had no relations with similar property. He was unaccustomed to deal with property of that character, and in fact the record shows that his experience was limited to building and selling two homes and acquiring the farm involved. He had no experience with business property in a village. He was not a dealer, but a farmer and laborer. Even if he had been in the county more recently, his presence would not have the same significance in knowing the value of the brick building as where a farmer deals for land in the community in which he lives, as was the case in Hoeft v. Raddatz, 170 Minn. 466, 212 N. W. 939, and Follingstad v. Syverson, 166 Minn. 457, 208 N. W. 200.

The facts, in my judgment, bring the misrepresentations as to value within the rule that such representations may be actionable

when the party claiming to be defrauded is in no position to ascertain value, as where the property is distant. Hoeft v. Raddatz, 170 Minn. 466, 212 N. W. 939; Follingstad v. Syverson, 166 Minn. 457, 208 N. W. 200. A new trial might, with propriety, have been granted. But if there is evidence sustaining the verdict, as I think there is, its propriety was first for the jury and then for the trial court, and I do not feel that we should disturb it. Indeed the record bristles, as the opinion intimates, with evidence of subtle dishonesty aside from the positive assertion of value which is termed "a mere statement." I am unable to comprehend the use or application of the adjective "mere" to emphasize the limitation of the representation, which to my mind is positive, direct and certain. A portion of the evidence as to the value of the brick building is as follows:

Q. "What did he say * * * the value was?

A. "Yes, he told me that the value was $13,500.

Q. "The value was $13,500?

A. "Yes, sir.

Q. "And that was what it was worth?

A. "Yes, sir.

Q. "And what did the defendant, Miller, say in reference to that?

A. "He told me that, too, * * * he further told me that that was his business, all over, * * * of * * * fixing values, * * * . I believed what they both of them told me. * * * I told them that I hadn't seen the property but I would take their word for it."

The evidence shows the value was $3,500.

Defendants also represented that the population was 1,600 when it did not exceed 250. If plaintiff's version of this transaction is true, and the jury says it is, he got no more than justice.

DIBELL, J.

I concur in the dissent of the Chief Justice.