Matter of Supplementary Proceedings
CLAUDE NEON, INC. (now Dynamics
Corporation of America), Judgment
Creditor,

v.

Lowell M. BIRRELL, Judgment Debtor.

United States District Court
S. D. New York.
Oct. 5, 1959.

Pomerantz, Levy & Haudek, New York
City, Irving Bizar, New York City, of

counsel, for judgment creditor Claude Neon, Inc. (now Dynamics Corporation of America).

Levien & Singer, New York City, Stuart H. Steinbrink, and Walter A. Bobrow, New York City, of counsel, for Levien, Greenwald & Co.

HERLANDS, District Judge.

■ Unless the United States Marshal levying by execution on a judgment-debtor's property obtains physical possession of the debtor's corporate stock certificate, the levy is ineffective as against a bona fide purchaser for value of the certificate to whom the duly endorsed certificate has been regularly delivered in the normal course of business. Under the stated circumstances, the levy does not invalidate the purchaser's title notwithstanding that the stock represented by the certificate had been purchased and the certificate delivered after the date when the execution was served on the corporation whose register at the time recorded the debtor as the owner of the stock.

*The Nature of the Motions at Bar*

This proposition of law is the crux of the controversy between the judgment-creditor, Claude Neon, Inc., now Dynamics Corporation of America ("Dynamics") and the bona fide purchaser for value, Levien, Greenwald & Co. ("Levien").

The judgment-debtor is Lowell M. Birrell. The judgment dated, entered and filed February 27, 1958, is for $3,256,-639.40. The relevant execution was issued on December 30, 1958. The stock certificate involved is Certificate No. CU69, for 100 shares of common stock in Reeves-Ely Laboratories, Inc., a New York corporation ("Reeves").

On April 7, 1959, Levien purchased 100 shares of Dynamics preferred stock from The Dominion Securities Corporation (of New York). Under a plan of merger, the common stock of Reeves was exchangeable, share for share, for Dynamics preferred stock.

On April 13, 1959, Levien paid the purchase price to The Dominion Securities Corporation. On April 21, 1959, The Dominion Securities Corporation delivered Certificate No. CU69 to Levien. On April 23, 1959, Levien delivered Certificate No. CU69 to Marine Midland Trust Company of New York ("Marine"), as transfer agent of Dynamics, for exchange and transfer for 100 shares of the $1 par value preferred stock of Dynamics, to be registered in Levien's name.

The issue of the legal effect of the execution of December 30, 1958, vis-a-vis the title of Levien to Certificate No. CU69 is raised by two motions: (1) an application by Dynamics to require Marine to turn over and deliver to the United States Marshal Certificate No. CU69; and (2) a cross-application by Levien to compel Marine to redeliver said stock certificate to Levien.

Marine does not claim a beneficial interest in the certificate, which it holds only in its capacity as transfer agent of Dynamics. Marine seeks an order permitting it to deposit the certificate in the registry of this court, there to abide the judgment of the court, discharging Marine of all liability in the premises and dismissing it from the present proceeding.

Dynamics has instituted supplementary proceedings against Birrell as judgment-debtor. A subpoena duces tecum [F.R.Civ.P., rule 69(a), 28 U.S.C.A.] having been served upon Levien, Levien has become a third party respondent in the supplementary proceedings.

*The Facts*

A chronology of the relevant events and transactions is essential.

According to the files and records of this Court, an execution dated June 23, 1958, required the United States Marshal to satisfy, out of Birrell's property, $3,-256,639.40 in satisfaction of a judgment (Judgment No. 62–054) recovered in this Court by Claude Neon, Inc., against Birrell, as appears by the judgment filed on February 27, 1958. The execution

was filed in the office of the Marshal on June 27, 1958. A typewritten notice attached to the execution by the attorneys for the judgment-creditor and dated June 26, 1958, was addressed to Dynamics. This notice stated "that the within execution is levied upon all dividends due or to become due and all other monies due or to become due to the judgment debtor herein, Lowell M. Birrell, upon stock hold [sic] by him in Dynamics Corporation of America; and any and all other monies due or to become due to said judgment-debtor from Dynamics Corporation of America."

This execution was returned on August 22, 1958 and marked "Judgment partially satisfied." The Marshal's notation indicates that he "collected the sum of $50.00 from the Marine Midland Trust Co. (Dividend pay. 6/30)." This execution was filed in this Court on August 28, 1959. Apparently, the judgment-creditor attaches no significance to the execution of June 23, 1958, for purposes of the present proceedings.

Another execution was issued under date of December 30, 1958. This execution was received in the Marshal's office on the same day. It was issued for the purpose of satisfying the judgment (Judgment No. 62–054) already referred to.

On December 31, 1958, the execution was served on Dynamics. According to the moving affidavit (Affidavit of Levy, sworn to July 21, 1959, p. 2), the Marshal levied the said execution "on the property of the judgment debtor by serving the execution upon Dynamics and among the property being levied on was the aforesaid 100 shares of common stock in Reeves-Ely Laboratories, Inc."

The Marshal's return, dated January 14, 1959, stated that he "collected the sum of $50.00 from the Marine Midland Trust Co.," and the Marshal's notation reads: "Judgment partially satisfied."

Under date of March 25, 1959, the signature of Birrell appears on the signature line on the printed form of assignment appearing on the reverse side of Certificate No. CU69. The date, "March 25, 1959," is stamped in the blank space provided for that purpose in the form of assignment (Affidavit of Straat, Jr., sworn to August 11, 1959).

On or about April 7, 1959, Dominion Securities Corp. Limited (a Canadian corporation) received Certificate No. CU69 "in the ordinary course of its business as a dealer in securities" to be sold "for the account of one of its customers," an attorney named Harry Blank, of 1255 University Street, Montreal. Dominion Securities Corp., Limited, instructed The Dominion Securities Corporation (of New York) to sell the said shares over-the-counter in New York (Affidavit of Gerald E. Bennett, dated August 7, 1959; Affidavit of J. R. Clarke, sworn to August 7, 1959).

On April 7, 1959, Levien purchased, for the price of $2,225, 100 shares of Dynamics preferred stock, at $22.25 per share. This purchase was for Levien's own account in the regular course of business and was from The Dominion Securities Corporation in the over-the-counter market. The Dominion Securities Corporation purchased 100 shares of Reeves common stock for the account and risk of Levien and sold the same shares for the account and risk of Dominion Securities Corp. Limited, a Canadian affiliate of The Dominion Securities Corporation. (Letter of Humes, Smith & Andrews, dated August 6, 1959; Affidavit of J. R. Clarke, sworn to August 7, 1959.)

On April 13, 1959, the settlement date of the transaction, Levien paid for the purchase, payment being made to The Dominion Securities Corporation (Affidavit of Seymour Levien, sworn to May 12, 1959).

On or before April 20, 1959, certificate CU69 was delivered to The Canadian Bank of Commerce, as agent for The Dominion Securities Corporation (Clarke affidavit, sworn to August 7, 1959).

On April 21, 1959, The Dominion Securities Corporation delivered to Levien Certificate No. CU69.

Certificate No. CU69 was registered and stood in the name of Birrell, but was duly endorsed in the usual form for transfer.

Birrell had never exchanged the Reeves stock for corresponding Dynamics stock. But Dynamics treated Birrell as one of its stockholders by carrying him on its (Dynamics) books as a stockholder and paying him the dividends declared on its stock.

On April 21, 1959, the delivery of the certificate to Levien was made in New York, through the agency of The Canadian Bank of Commerce. The certificate, registered in the name of Birrell, was delivered "in form normally good for transfer" (Affidavit of Clarke, sworn to August 7, 1959).

The certificate was in negotiable form, endorsed in blank by the registered holder, Birrell, whose signature was guaranteed by the Royal Bank of Canada (Affidavit of Bennett, sworn to August 7, 1959).

At no time did Dominion Securities Corp., Limited, have knowledge of a judgment against Birrell or of any other impediment to the transfer of the certificate to Levien (Affidavit of Bennett, sworn to August 7, 1959).

The Dominion Securities Corporation (of New York) had no knowledge of any ownership or interest of Birrell in the certificate or the stock represented thereby (Affidavit of Clarke, sworn to August 7, 1959).

The net sales proceeds of $2,107.70 was paid by Dominion Securities Corp., Limited, to its customer, Harry Blank, by check dated April 15, 1959 (photostatic copy of which has been submitted by Levien). The check was subsequently endorsed by Harry Blank (Affidavit of Bennett, sworn to August 7, 1959).

Harry Blank, the customer of Dominion Securities Corp., Limited, "has asserted that he was the owner of the stock, for value" (Affidavit of Clarke, sworn to August 7, 1959, p. 2).

The Dominion Securities Corporation has made payment to Dominion Securities Corp., Limited, in the amount of $2,225, less commission, transfer taxes and fee, making a net payment of $2,190.82.

On the reverse side of the certificate, there is a stamped notation reading that the New York and Federal tax due was paid through the Stock Clearing Corporation on April 21, 1959. This notation concludes with the name of Levien.

On April 23, 1959, Levien forwarded to Marine Certificate No. CU69 for 100 shares of Reeves common stock registered in the name of Birrell "for exchange and transfer for 100 shares of the $1.00 par value preferred stock" of Dynamics, to be registered in the name of Levien (Affidavit of Straat, Jr., sworn to August 11, 1959).

After April 21, 1959, the date when the certificate was delivered to Levien, The Dominion Securities Corporation learned that there was a judgment entered in favor of Dynamics against Birrell (Humes, etc., letter, dated August 6, 1959).

Sometime after April 23, 1959, acting on request, Marine delayed making the transfer to Levien.

Levien's assertions—that it was a purchaser in good faith for value of the stock from The Dominion Securities Corporation (Seymour Levien affidavit, sworn to May 12, 1959)—are conceded by the judgment-creditor for purposes of this motion. Although the judgment-creditor originally asserted that Levien was a purchaser of the stock "from the judgment debtor" and, therefore, "takes subject to the execution," (Levy affidavit, sworn to July 21, 1959, p. 3), "the judgment-creditor has formally stated that the judgment-creditor will assume for purposes of this motion that they [Levien, Greenwald & Co.] are innocent purchasers for value" (Irving Bizar affidavit, sworn to August 11, 1959, p. 2).

## I.

The judgment-creditor contends that physical possession on the part of Dynamics of Certificate No. CU69 was not essential for a valid execution; and that,

since the certificate was not negotiated by the judgment-debtor until March 25, 1959, Levien takes "subject to" the execution of December 30, 1958, notwithstanding the conceded fact that Levien was an innocent purchaser for value.

Because there is no controlling Federal provision, State practice and procedure govern this situation (F.R.C.P., rule 69).

The Uniform State Transfer Act, as adopted by New York in its Personal Property Law, McKinney's Consol. Laws, c. 41, §§ 162–185, clearly requires the conclusion that, under the circumstances of this case, delivery by The Dominion Securities Corporation of the duly endorsed certificate was effectual to transfer sound title to Levien, who was a purchaser for value in good faith.

Where the endorsement has been made in fact by the person appearing by the certificate to be the owner thereof, and where the transferee buys the stock and receives the certificate without notice of any facts making the transfer wrongful, the transferee obtains an indefeasible right to the certificate and the shares represented thereby.

█ When The Dominion Securities Corporation for value transferred the certificate to Levien, the former warranted as a matter of law that it had "a legal right to transfer it" and that it had "no knowledge of any fact which would impair the validity of the certificate" (New York Personal Property Law, § 172).

## II.

The philosophy of the Uniform Stock Transfer Act is well indicated by the Commissioners' Note to section 1 of the Act, "that the transfer of the certificate is here made to operate as a transfer of the shares, whereas at common law it is the registry on the books of the company which makes the complete transfer. The reason for the change is in order that the certificate may, to the fullest extent possible, be the representative of the shares. This is the fundamental purpose of the whole act, and is in accordance with the mercantile usage. The transfer on the books of the corporation becomes thus like the record of a deed of real estate under a registry system."

█ The Uniform Stock Transfer Act epitomizes the "commercial" view of a stock certificate that "the shares are identified with the certificates, which are not regarded as mere evidences of stock, but the stock itself". 122 A.L.R. 338, 366. The Uniform Act "seeks to supply elements of negotiability to certificates of corporate stock which had been lacking at common law." See Mason v. Public National Bank & Trust Co. of N. Y., First Dept.1941, 262 App.Div. 249, 256, 28 N.Y.S.2d 416, 423, affirmed 1942, 287 N.Y. 809, 41 N.E.2d 91.

When the execution of December 30, 1958, was levied by the United States Marshal, Certificate No. CU69 was not in the physical possession of either Dynamics or Marine. No levy under the execution could have been made upon the stock during the term of such levy because the stock certificate was not in the possession of Dynamics at the time of the levy or while the levy was outstanding. Title to the stock never passed to the United States Marshal. The certificate was never executed upon by the Marshal.

## III.

The judgment-creditor argues that there is no New York statute requiring possession of the stock certificate for a valid levy by execution upon shares of stock to satisfy a judgment. The judgment-creditor asserts that New York Personal Property Law, § 174 (Uniform Stock Transfer Act, section 13) is limited to "attachment" situations and is not applicable to levy by execution on a stock certificate upon a judgment, as distinguished from a levy of attachment. It becomes necessary to examine this interpretation of Personal Property Law, § 174, based upon the judgment-creditor's analysis of Ajax Craftsmen, Inc. v. Whinston, 1935, 269 N.Y. 7, 12, 198 N.E. 611.

In 1935, when the Craftsmen case was decided, New York Civil Practice

Act, § 679 did not permit a levy by execution of a stock certificate upon a judgment without a prior valid attachment. The Court of Appeals in the Craftsmen case "reluctantly" came to that conclusion and commended "this anachronism to the attention of the Legislature" (269 N.Y. at page 12, 198 N.E. at page 613).

The very next year the Legislature amended (by Laws of 1936, ch. 153) the execution statute (C.P.A. § 687) by expressly permitting a levy by execution on a stock certificate.

While the 1936 amendment also amended Personal Property Law, § 162, by adding the present subdivision "(c)" to said section, the Legislature did not amend section 174 of the Personal Property Law. It is this circumstance—the non-amendment of section 174—that the judgment-creditor seizes upon to project the further argument that the Legislature impliedly adopted the restrictive interpretation of Personal Property Law, § 174, expounded in the Craftsmen case.

■ The contrary argument, however, is clearly persuasive—that the 1936 amendment necessarily extended the coverage of Personal Property Law, § 174, to a levy by execution on a stock certificate upon a judgment.

The 1954 decision in Ballin v. Ballin, Sup.Ct. Nassau County, 138 N.Y.S.2d 556, correctly holds that, notwithstanding the failure of the Legislature to amend Personal Property Law, § 174, the amendment of C.P.A. § 687 to permit a levy of execution on a stock certificate evidences an intention to make section 174 applicable to the levy by execution upon a judgment.

Conclusive demonstration that such was the intent of the Legislature is furnished by the history of the amendment of C.P.A. § 687. The New York Judicial Council in its 1936 report, page 28, stated:

"The Council presents a recommendation to provide more effective means of collecting money judgments by extending section 687 of

the Civil Practice Act which now permits levy of execution on certain evidences of debt, to permit the levy and sale of certain tangible (and marketable) choses in action, the value of which is reasonably ascertainable, such as securities. Levy of attachment has long been permitted on this type of property. The Court of Appeals has recently commended this matter to the Legislature in Ajax v. Whinston decided November 19, 1935. A correlated amendment to section 162 of the Personal Property Law is also recommended."

The Judicial Council in its 1937 report, in enumerating its recommendations adopted during 1936, said at page 19:

"By Chapter 153, Civil Practice Act section 687 was amended to permit levy of execution upon securities and certain readily saleable choses in action, such as promissory notes, stock certificates, checks, acceptances, bonds, certificates of interest or participation. Unlike the levy of attachment upon choses in action (Civil Practice Act section 917), the levy of execution is to be made *by taking possession of the physical instrument representing the property.*" (Emphasis supplied.)

The judgment-creditor claims that the authority of the Ballin case has been vitiated by the later decision in Monitor Co. v. Confianza Furniture & App. Corp., Sup.Ct. Kings County 1955, 142 N.Y.S.2d 140, 141. But the Court in the Monitor case, simply said (142 N.Y.S.2d at page 143) that the Ballin case was "inapplicable to the circumstances" before it.

IV.

■ Another fatal flaw in the judgment-creditor's case is the expiration of the validity of the execution issued December 30, 1958 and returned partially satisfied on January 14, 1959.

Section 640 of the New York Civil Practice Act, in defining the "requisites"

of an execution, provides *inter alia* that an execution " \* \* \* must require the sheriff to return it to the proper clerk within sixty days after the receipt thereof \* \* \*."

On the return of an execution or after 60 days from the date when it was received by the Marshal, the execution expires unless it is extended for another 60-day period, as provided in New York C.P.A. § 640. 7 Carmody Wait 637–638. No extension was granted or requested herein. When the certificate was delivered by Levien to Marine on April 23, 1959, there was no validly outstanding execution under which a levy could be made. The judgment-creditor's present application is in aid of a defunct execution.

*Conclusion*

Dynamics' application is denied. Levien's cross-application is granted. Settle order on notice within ten days from the date of the filing of this decision.