## MARY E. SCHMIDT v. CLEMENT THOMPSON.[1]

May 10, 1918.

No. 20,810.

**Fraud — question for jury — damages — misconduct of jurymen and counsel.**

In this action to recover damages sustained by alleged fraudulent representations made by defendant, it is *held*:

(1) The evidence on the issues of whether the representations were made, were false, and whether plaintiff relied thereon and was deceived thereby, made a case for the jury, and sustains the verdict in favor of plaintiff. It is not conclusive against the right to recover that plaintiff made a partial examination of the stock of goods that was the subject of the alleged fraudulent representations, the evidence being that she relied at least in part upon the representation. A representation that the stock was of a certain value *held* under the circumstances to be a representation as to a fact, and not a mere expression of opinion, or trade talk.

(2) The damages are not excessive.

(3) The finding of the trial court that the fact that during the progress of the trial two of the jurymen played cards publicly with the attorney for plaintiff and another did not affect the verdict and was therefore not prejudicial to defendant, is sustained. Other charges of misconduct on the part of counsel *held* not ground for reversal.

(4) There was no abuse of discretion in permitting plaintiff to impeach her own witness. There was no prejudicial error in any of the rulings on the trial assigned as error.

Action in the district court for Todd county to recover $10,000 for false representations in exchange of property. Defendant interposed

[1]Reported in 167 N. W. 543.

a counterclaim for $381. The case was tried before Roeser, J., who when plaintiff rested denied defendant's motion to dismiss the action, and at the close of the testimony his motion for a directed verdict, and a jury which returned a verdict in favor of plaintiff for $4,661.87. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*G. F. Cashman* and *W. F. Donohue,* for appellant.

*M. J. Daly,* for respondent.

BUNN, J.

In May, 1915, plaintiff owned a farm near the station of Philbrook in Todd county, and some live stock and farm machinery. Defendant, a real estate dealer at Staples and Motley, owned a stock of general merchandise in a store in the village of Altoona, Iowa. Plaintiff and her husband conveyed the farm and personal property to defendant, and he gave plaintiff a bill of sale of the stock of merchandise. In the trade the interest of plaintiff in the farm and personal property was valued at $7,000 and the merchandise stock at $14,000. Plaintiff gave defendant a note for $7,000 secured by a chattel mortgage on the stock. Plaintiff and her husband took possession of the Altoona store in June, 1915, and continued to run it until the stock was taken from them on foreclosure of the chattel mortgage in the fall of the same year. Plaintiff and her husband then returned to Philbrook. Her husband died soon after. This action was to recover damages for alleged fraudulent representations by defendant that induced plaintiff to make the trade. The trial resulted in a verdict in favor of plaintiff for $4,661.87. Defendant appeals from an order denying his motion in the alternative for judgment notwithstanding the verdict or for a new trial.

The contentions of defendant on this appeal, stated in the order in which we will consider them, are these: (1) There should be judgment in his favor notwithstanding the verdict; (2) the damages awarded are excessive; (3) there was misconduct on the part of plaintiff's attorney and on the part of certain jurors that was prejudicial to defendant; (4) there were prejudicial errors in various rulings on the admission of evidence.

1. The charges of fraud submitted to the jury by the trial court

were these: That defendant represented to plaintiff that the store inventoried $14,000 at cost prices, was worth that amount, and that it was a good and up-to-date stock. Other fraudulent representations were claimed by plaintiff, but were eliminated by the trial court and need not be mentioned here. The questions whether these representations were fraudulently made, were false, and were relied on by plaintiff, were submitted to the jury in a clear and accurate charge, and the inquiry here is limited to determining whether the evidence made a case for the jury on these questions. A brief statement of what the evidence, considered from plaintiff's standpoint, tended to show follows:

April 1, 1915, Leroy Battles owned the Altoona stock of goods. He had a general store at Mitchellville, a town a few miles from Altoona, and ran both stores. He had bought the Altoona stock about a year before, paying $6,300 for it. Within a few months he became dissatisfied, and was looking for a chance to sell or trade. Through an auctioneer of Staples, Battles met the defendant, and the result was a trade of the stock of goods for a farm of defendant near Motley. This was about April 1, 1915, and Battles and defendant both testify that an inventory of the stock and fixtures taken at this time showed the wholesale price to be $13,450. Battles claimed that he had increased the stock from $7,000 at the time he purchased to over $13,000 at the time he sold to defendant. Immediately before the trade he shipped goods from the Mitchellville store to the Altoona store. Defendant took possession of the store, and conducted it through one Immel until the sale to plaintiff. It is clear enough that the Altoona business was not profitable, though neither Battles nor defendant admit this. But each evidenced a strong desire to get rid of the stock shortly after he purchased it. It was in the latter part of May, 1915, that defendant drove in his automobile to the farm of plaintiff and her husband and endeavored to persuade them to trade their farm for the stock of goods. Plaintiff testified that he made the representations before mentioned as to the inventory, the value, and the character of the stock, and this must be taken as true. He took plaintiff and her husband to Staples in his car. They executed a deed to the farm, a bill of sale of the personal property, and a note for $7,000 and a chattel mortgage on the

Altoona stock. Defendant executed a bill of sale of the stock. All these papers were left in a bank at Staples to be delivered if the deal went through. Plaintiff and her husband went to Altoona with defendant about June 1. They went to the store, spent some time in it, and made some examination of the stock. Plaintiff says that she and her husband wanted to take an inventory, but that defendant dissuaded them, representing that an inventory had been taken two months before and that it would be a useless expense. She also testified that their examination of the stock consisted of looking over it as it lay upon the shelves, and that no goods were taken down and examined, except as defendant took down some boxes of shoes and showed them. Plaintiff and her husband appear to have been satisfied, and closed the deal, notifying the bank at Staples to turn over the papers. It was agreed that plaintiff should keep up the stock and bills, and should pay defendant each month 25 per cent of the gross sales, to be applied on the note and chattel mortgage.

Plaintiff and her husband took possession of the store and proceeded to conduct the same. Plaintiff spent the first week in the store and her son came soon after to work as a clerk. Immel was retained as manager. The stock was kept up, the bills paid, and the payments made to defendant for some two or three months, when it was found impossible to continue to make the payments from the business that was being done. Defendant sold the note and chattel mortgage to a bank in Altoona; plaintiff claims this was done contrary to a promise by defendant, and without the knowledge or consent of plaintiff or her husband; defendant claims that they agreed to the sale. In any event, as before stated, the mortgage was foreclosed by the bank, with the result that plaintiff and her husband lost the stock of goods, as they had already lost their farm.

As we have said, it must be taken as true that defendant represented that the stock inventoried $14,000, that it was worth that amount, and that it was a good, or new, and up-to-date stock. We think also that the evidence made a case for the jury on the question of the falsity of these representations. Indeed it is pretty clear, taking the evidence as a whole, that the stock was old, by no means up-to-date, and not worth anywhere near the amount represented. It was not a saleable

stock, and defendant knew this from his own experience with it, and the experience of its former owners. That plaintiff and her husband believed the representations to be true, and that they relied on them in making the deal were questions of fact for the jury, and the evidence sustains plaintiff's claims in this regard, in spite of the fact that they went to Altoona with defendant and had an opportunity to examine the stock before closing the deal. Taking plaintiff's testimony as true, they made but a partial investigation, and relied in part at least upon the representations of the seller, and were deceived by those representations. Under such circumstances an action for deceit may be maintained. Kraus v. National Bank of Commerce of Mankato, supra, p. 108, 167 N. W. 353, and cases cited.

We do not sustain defendant's contention that the representation as to the value of the stock of goods should not have been submitted to the jury. This was clearly more than a mere expression of opinion, or "trade talk." It was a representation of a fact, within the knowledge of defendant, and not easily ascertained by plaintiff. Brown v. Andrews, 116 Minn. 150, 133 N. W. 568; Adan v. Steinbrecher, 116 Minn. 174, 133 N. W. 477; Ludowese v. Amidon, 124 Minn. 288, 144 N. W. 965.

Our conclusion, derived from a study of the entire evidence, is that the case was for the jury. Defendant was not entitled to a directed verdict, nor to a new trial on the ground of the insufficiency of the evidence to sustain the decision of the jury on the questions on which the right of plaintiff to recover depended.

2. Little need be said as to the claim of excessive damages. No question as to the proper rule as to the measure of damages is involved. While the evidence is not entirely satisfactory, we think it justified a finding that plaintiff was damaged by defendant's deceit in at least the amount found by the jury.

3. The most serious claim of misconduct is based upon the following facts: The trial took place at Long Prairie in March, 1917, and consumed about a week's time. The weather was cold and stormy, and the snow deep. The trial judge, plaintiff's counsel, defendant's counsel, defendant himself, a number of his witnesses and two of the jurors in the case were stopping at the Reichert Hotel. Plaintiff's counsel, the county attorney, court reporter and a prominent lawyer of Long Prairie

played whist together in the hotel evenings during the trial. On two of these occasions the two jurors, at their own solicitation, joined the games. On each of these occasions the game was played in the lobby of the hotel in full view of its guests, including defendant and his counsel. The case was not discussed or mentioned. The trial court heard the evidence bearing upon this charge of misconduct and while saying that the actions were "not to be commended," found that they had no influence upon the verdict, and denied a new trial. Counsel for plaintiff concedes that he should not have played cards with the jurors, and we agree that he should not have done so. Such a practice does not meet our approval, but considering the high standing of counsel, the situation in which he was placed, and the fact that the game was played in a public place, in full view of defendant and his counsel, we think the finding of the trial court that no prejudice resulted to defendant should be sustained. We need not refer here to the authorities cited.

The claim of misconduct based on the actions of one Tabery in conversing with some of the jurors is not sustained.

The contentions that plaintiff's counsel was guilty of misconduct by various remarks in his addresses to the jury and during the trial need not be specifically mentioned. We find nothing here that requires a reversal. Insofar as counsel said anything that he ought not to have said, any harm was removed by the trial court's instructions to the jury.

4. The claims of errors in the rulings on the admission of evidence are many, and for the most part unimportant. We will note but one specifically:

Error is assigned in permitting plaintiff to impeach a witness called by her, Immel, the man who worked for defendant in the store before the sale to plaintiff, and who afterwards managed the store for plaintiff. It is fairly clear that Immel was a hostile witness, and that plaintiff's counsel was surprised by his adverse testimony. There was no abuse of discretion in permitting the foundation for impeachment to be laid, and the impeaching evidence. Selover v. Bryant, 54 Minn. 434, 56 N. W. 58, 21 L.R.A. 418, 40 Am. St. 349; 3 Notes on Minn. Reports, 1022; 3 Dunnell, Minn. Dig. § 10356.

We have considered carefully all the other claims of error, and find

nothing of a prejudicial character. The evidence was lengthy and took a wide range. It may be that some evidence was admitted that was not strictly relevant to the issues, but we discover no error of a character to justify us in granting a new trial. There was no error in refusing a request to charge as offered by defendant.

Order affirmed.