Raymond T. DEVINE, Plaintiff

v.

RAYETTE–FABERGE, INC., a Minnesota corporation, and Northwestern National Bank of St. Paul, a national banking corporation, Defendants and Third-Party Plaintiffs,

v.

HARRIS, UPHAM & CO., Incorporated, a Delaware corporation, and Reynolds & Co., a partnership, Third-Party Defendants.

No. 3–67 Civ. 261.

United States District Court
D. Minnesota,
Third Division.

June 24, 1968.

Feinberg, Mirviss, Meyers, Schumacher & Malmon, Minneapolis, Minn., for plaintiff Raymond T. Devine.

Levitt, Palmer, Bowen & Bearmon, Minneapolis, Minn., for defendant and third-party plaintiff Rayette-Faberge.

Oppenheimer, Hodgson, Brown, Wolff & Leach, St. Paul, Minn., for defendant and third-party plaintiff Northwestern Nat. Bank of St. Paul.

Faegre & Benson, Minneapolis, Minn., for third-party defendant Harris, Upham & Co.

Vennum, Newhall, Ackman & Goetz, Minneapolis, Minn., for third-party defendant Reynolds & Co.

NEVILLE, District Judge.

Involved here is the question of the proper statute of limitations to be applied to an alleged conversion and subsequent reregistration and reissue by a transfer agent of shares of corporate stock with particular reference to the Minnesota "borrowing" statute of limitations.

Plaintiff is, and at all times material was, a resident and citizen of California.

He instituted the above lawsuit in this court against defendants Rayette-Faberge Inc. ("Rayette") and the Northwestern National Bank of St. Paul, Minnesota ("Northwestern Bank"), on September 18, 1967. Rayette is a Minnesota corporation with its principal place of business in New York. Northwestern Bank, situate in Minnesota, was at times material hereto one of the transfer agents and registrars for Rayette capital stock.

Defendants filed third-party complaints naming Harris, Upham & Co., Inc. ("Upham") and Reynolds & Company ("Reynolds") as third-party defendants. Upham is a Delaware corporation engaged in a national securities brokerage business with offices in Minnesota, Illinois and elsewhere. Reynolds is a partnership engaged in the same business and maintains similar offices in Minnesota, Illinois and other locations.

Irving Trust Company of New York is not a party in this action. It is involved here, however, as one of the transfer agents and registrars for Rayette stock from June 6, 1960 until June 14, 1963.

One Lipkin, also not a party to this action, is a resident of Chicago, Illinois. He engaged in some business transactions with plaintiff. The dispute at bar involving Rayette common stock grows out of a transaction occurring between February 26, 1959, and October 25, 1961. A brief synopsis of the undisputed facts on this motion for summary judgment against the plaintiff is necessary. The following facts appear undisputed from the pleadings, affidavits and briefs of counsel on file.

On February 26, 1959, an account styled "Lipkin and Devine" was opened in Reynolds' Chicago office. At Lipkin's urging, plaintiff furnished one-half of the funds necessary for the original purchase of Rayette common stock by the account, and personally loaned Lipkin some $8,000 for a part of Lipkin's proportionate share or interest in the account purchase. Though originally only 1,000 Rayette shares were acquired, by October 1959 the Lipkin and Devine account with Reynolds swelled through stock dividends and stock splits to an aggregate of some 6,000 shares.

The precise disposition of all 6,000 shares is not clear but it does appear that all were delivered out of or removed from the Reynolds' account by October 23, 1959. A certain 1,200 shares were taken out of the so called street name and transferred to and registered in the name of Lipkin and Devine. A partner in the Reynolds' Chicago office authorized the guarantee of the Lipkin and Devine signatures, endorsing three stock certificates representing the 1,200 shares.

The three certificates (Nos. 4090, 4753 and 5374), were pledged on August 17, 1961, to the Peoples National Bank of Chicago as collateral for a loan made in the name of Devine and Lipkin. Subsequently, and on or about October 11, 1961, an account was opened in the Chicago office of Upham in the name of Lipkin and Devine. On approximately the same day, Upham received a letter from the Peoples National Bank, dated October 11, 1961, enclosing the stock certificates described above in the name of Lipkin and Devine endorsed and with signature guaranteed by Reynolds. The letter requested Upham to sell the same and on the settlement dates to forward the proceeds for the sale of the 1,200 shares to the Peoples Bank. Another letter to the same effect, purportedly signed by Lipkin and Devine, was transmitted to Upham. On the same day the 1,200 shares were sold and the funds remitted to the Peoples Bank. Upham also guaranteed the signatures on the stock certificates. All of these transactions took place in Illinois and there are no allegations by any party that to this point any other State was involved.

On or about October 25, 1961, Irving Trust Company through its New York office, acted as transfer agent and registrar for Rayette in cancelling the three stock certificates (4090, 4753, 5374) representing the 1,200 shares and issuing

new certificates therefor in the name of Upham. This entire transfer took place in New York. Northwestern Bank, then also a transfer agent and registrar did not effect this transfer or registration, and only after the fact did it receive written notice from Irving Trust Co. of the transfer and re-registration.

Plaintiff claims he had no knowledge relating to the removal and sale of the 1,200 shares; that his endorsements to the certificates and the letter sent to Upham were forged; that he was a 50% owner in the 1,200 shares and that he never received any of the proceeds. He sues Rayette and Northwestern Bank for the alleged wrongful conversion, and seeks either damages or the issuance of replacing shares. The court finds that plaintiff is barred as a matter of law either by the statute of limitations of the State of New York, or, alternatively, the statute of limitations of the State of Illinois. Thus the defendants' motions for summary judgment must be granted.

■ In this diversity action the court is bound by the laws of the State of Minnesota including its principles of conflict of law. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

Under Minn.Stat. § 541.05 (Supp. 1967) an action sounding in conversion must be brought within six years of the accrual of the cause of action. Thus, if the Minnesota statute of limitations were applicable, plaintiff would not be barred, for admittedly six years has not lapsed since the alleged conversion took place. Conversely, however, if one of the statutes of limitations of New York or Illinois is applicable plaintiff then is barred since under 83 Ill.Ann.Stat. § 16 (Smith-Hurd 1966)[1] the period for bringing suit is five years, while 7B N. Y. C.P.L.R. § 214 (McKinney 1963)[2] provides a three year limitations period. Defendants and third-party defendants earnestly contend that under Minn.Stat. § 541.14 (1965)[3], Minnesota's so-called "Borrowing Statute,"[4] the statutes of limitations either of New York or Illinois govern.

Section 541.14 Minn.Stat. provides in full as follows:

"When a cause of action has arisen outside of this state and, by the laws of the place where it arose, an action thereon is there barred by lapse of time, no such action shall be maintained in this state unless the plaintiff be a citizen of this state who has owned the cause of action ever since it accrued."

If, as the movants contend, the statutory elements of § 541.14 are fulfilled, then plaintiff's action is barred in Minnesota. Pattridge v. Palmer, 201 Minn. 387, 277

---

1. 83 Ill.Stat.Ann. § 16 (Smith-Hurd 1966) provides as follows:
"Except as provided in Section 2–725 of the 'Uniform Commercial Code', enacted by the Seventy-second General Assembly, actions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued."

2. 7B N.Y.C.P.L.R. § 214 (McKinney 1963) provides in pertinent part as follows:
"The following action must be commenced within three years:

*   *   *   *   *

3. an action to recover a chattel or damages for the taking or detaining of a chattel;
4. an action to recover damages for an injury to property   *   *   *."

3. The predecessor to the present § 541.14 withstood a constitutional challenge under the "privileges and immunities" clause of Article IV, § 2 in Canadian Northern Ry. v. Eggen, 252 U.S. 553, 40 S.Ct. 402, 64 L.Ed. 713 (1920).

4. For comprehensive analysis and categorization of borrowing statutes, see Ester, Borrowing Statutes of Limitation and Conflict of Laws, 15 U.Fla.L.Rev. 33 (1962); Vernon, Statutes of Limitation in the Conflict of Laws: Borrowing Statutes, 32 Rocky Mt.L.Rev. 287 (1960).

N.W. 18 (1937); Klemme v. Long, 184 Minn. 97, 237 N.W. 882 (1931); Burkhardt v. Northern States Power Co., 180 Minn. 560, 231 N.W. 239 (1930); Moe v. Shaffer, 150 Minn. 114, 184 N.W. 785, 18 A.L.R. 1194 (1921); Kamper v. Hunter Land Co., 146 Minn. 337, 178 N.W. 747 (1920); Drake v. Bigelow, 93 Minn. 112, 100 N.W. 664 (1904); Luce v. Clarke, 49 Minn. 356, 51 N.W. 1162 (1892). Section 541.14 thus removes what might otherwise be a complex conflict of laws question[5] from the case, since only the Minnesota cases interpreting that section need be consulted. The narrow question is whether the statute applies in the context of the facts heretofore set out.

■ The borrowing statute prescribes three prerequisite conditions before barring a cause of action in this forum: (1) a cause of action arising outside of the state; (2) a statutory bar where the cause of action arose; and (3) a plaintiff who is not a Minnesota citizen. Plaintiff concedes that condition number (3) is satisfied. Thus, inquiry is limited to the first two criteria. Plaintiff contends that a genuine issue of fact exists and that summary judgment therefore is improper. However plaintiff points to no fact militating against the defendants' position which is well-established by affidavit. It is clear that plaintiff cannot merely stand on the allegations of his complaint, regardless of how well pled, in resisting a motion for summary judgment. First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d

569; Lundeen v. Cordner, 356 F.2d 169 (8th Cir. 1966).

■■ Under the Minnesota case authority cited supra, the conclusion that the plaintiff's cause of action arose outside Minnesota is compelled.[6] As a general rule, a wrongful transfer and reissuance of stock certificates by the corporation creates a cause of action in conversion against the transferring corporation. See Mathews v. First Citizens Bank, 374 S.W.2d 794 (Tex.Civ.App. 1963); Fleckenstein v. Franklin Nat'l Bank, 32 Misc.2d 1032, 226 N.Y.S.2d 51 (Sup.Ct.1962); Casper v. Kalt-Zimmers Mfg. Co., 159 Wis. 517, 149 N.W. 754, 150 N.W. 1101 (1914); 12 Fletcher, Cyclopedia Corporations § 5551, at 683 (Rev. ed. 1957). Cf. In re Bush's Trust, 249 Minn. 36, 81 N.W.2d 615, 82 N.W.2d 221 (1957). Since the acts purportedly creating liability were the wrongful cancellation and reissuance of the Rayette stock certificates over forged endorsements, the cause of action arose in New York. Rayette's authorized transfer agent, Irving Trust, there received the certificates with allegedly forged endorsements, cancelled the same, and reissued certificates to third-party defendant, Upham. Irving Trust had complete and final authority to cancel and reissue the certificates. In this situation, the fact that the principal is a Minnesota corporation does not alter the fact that the cause of action arose elsewhere. Kamper v. Hunter Land Co., 146 Minn. 337, 178 N.W. 747 (1920). Thus upon the wrongful transfer, the cause of action arose in New York at the latest.

---

5. Cf. In re Daniel's Estate, 208 Minn. 420, 294 N.W. 465 (1940).

6. Section 541.14 is neither precise nor clear in referring to what law is to be used in making the decision of where a cause of action accrues. Since there appears to be no Minnesota law dealing with the problem of when a cause of action accrues for a conversion of stock certificates by cancellation and reissuance over a forged endorsement, and furthermore, since the courts of other jurisdictions appear nearly unanimous in granting

a cause of action upon the transfer, there appears to be little difficulty in making the § 541.14 determination. Moreover, even if the policy approach to conflict of laws, exemplified by Schneider v. Nichols, 158 N.W.2d 254 (Minn.1968), is applied. the result finding New York the place of accrual is not changed. Minnesota had almost nothing to do with the transaction by merely receiving notice thereof. Policy considerations therefore indicate that either the law of New York or Illinois govern the legality of the transaction.

Informing the transfer agent and registrar in Minnesota, the Northwestern Bank, of the cancellation and reissuance was merely a perfunctory act carried out in the normal course of business. Inasmuch as the wrong to plaintiff by these defendants occurred by the improper transfer the conversion occurred in New York. It should be noted that while the cause of action may have accrued even prior to the New York transfer, see O'Connell v. Chicago Park District, 376 Ill. 550, 34 N.E.2d 836, 135 A.L.R. 698 (1941), there is no authority indicating a later time of accrual.

Since plaintiff's cause of action arose in New York, then under § 541.14 plaintiff is barred if he would be barred in that state. Under the law of New York, plaintiff, suing for conversion by virtue of a wrongful transfer of stock certificates is barred by the three year statute of limitations provided by 7B N.Y. C.P. L.R. § 214 (McKinney 1963). There is no question but what § 214 governs an action in conversion and that it commenced to run from the date of transfer. Nichimen & Co., Inc. v. Framen Steel Supply Co., 44 Misc.2d 260, 253 N.Y.S.2d 713 (Sup.Ct.1964); Einhorn v. Einhorn, 20 A.D.2d 914, 249 N.Y.S.2d 439 (1964); Fleckenstein v. Franklin Nat'l Bank, 32 Misc.2d 1032, 226 N.Y.S.2d 51 (Sup.Ct. 1962); Perkins v. De Witt, 197 Misc. 369, 94 N.Y.S.2d 177 (1950), aff'd in part; rev'd on other grounds 279 App. Div. 903, 111 N.Y.S.2d 752 (1952). All three criteria of § 541.14 are satisfied. Plaintiff thus is barred in Minnesota pursuant to the borrowing statute which looks to New York law in determining whether plaintiff is barred there. Even if the cause of action arose earlier in Illinois, the same result is reached for under that statute of limitations, the plaintiff is again barred.

Plaintiff earnestly argues in his brief that the situs of shares of stock for quasi in rem or in rem jurisdictional purposes is normally the state of incorporation even though the certificates representing ownership are physically located outside the corporate domicile.

For this proposition, plaintiff cites Albuquerque Nat'l Bank v. Citizens Nat'l Bank in Abilene, 212 F.2d 943 (5th Cir. 1954); Sylvania Indus. Corp. v. Lilienfeld, 132 F.2d 887 (4th Cir.1943); McQuillen v. National Cash Register Co., 13 F.Supp. 53 (D.Md.1935); 11 Fletcher, Cyclopedia Corporations § 5101, at 130 (Rev.Ed.1957) and a number of state court decisions. From this premise plaintiff then urges that his rights as a shareholder were not lost or deprived until the actual entry was made in the share register at the home office of the corporation, i.e. Minnesota; that therefore the conversion, or the final act, took place in Minnesota and the Minnesota six year statute of limitations should govern.

■ It seems to the court that this is a spurious argument. The certificates are the evidence of ownership and when these are stolen or forged and transferred it is then that the conversion takes place not some time later when the ministerial act of entering the transfer on the books in the home office of the corporation occurs. The transfer and reissuance was done by the corporation (through its New York agent) when it cancelled and reissued. Plaintiff is attempting to fracture this by saying that though the corporation did such, it was not a fait accompli until the accounting work was done and entry had been made in the share register.

The Uniform Stock Transfer Act, Minn.Stat. § 302.02 provides in part:

"Title to a certificate and to the shares represented thereby can be transferred only: * * *." (Emphasis added.)

The obvious concept of this Act is that the certificate and the shares are one and the same for purposes of transfer. Plaintiff is attempting to argue that though the certificate may be converted in New York by transfer and reissuance, the shares represented thereby are not converted until later when the formal entry is made on the corporation's books which were maintained in Minnesota.

The case of Claude Neon, Inc. v. Birrell, 177 F.Supp. 706 (S.D.N.Y.1959) analogizes the formal entry on the corporate books to the "record of a deed of real estate under a registry system" and holds under the Uniform Stock Transfer Act in accordance with the above that the transfer of the certificate is the transfer of the shares.

A Minnesota leading case on the subject of transfer is In re Bush's Trust, 249 Minn. 36, 81 N.W.2d 615, 82 N.W.2d 221 (1957) where the court stated:

"In Minnesota we have never held that a stock certificate is but secondary evidence of ownership. It is the law of this state that a transfer of stock is good between the parties and that the title passes to the purchaser without the transfer being entered on the corporate books. * * * the title under our decisions normally follows the certificate. Prior to our adoption of the Uniform Stock Transfer Act in 1933, this court held that the recording of stock transfers on the corporate books is required for the purpose of notice to the corporation and for its benefit. There is nothing in the Uniform Stock Transfer Act which changes the purpose of this rule. The statutory requirement, § 302.02, that the title to a certificate, and to the shares represented thereby, can be transferred only by a delivery of the certificate endorsed either in blank or to a specified person (or when accompanied by a separate written assignment or power of attorney), emphasized the importance of the certificate as a badge of title to the shares."

The court agrees with cases cited by plaintiff relating to *quasi in rem* jurisdiction, but believe that they do not meet the issue in this case. The *Mathews, Fleckenstein* and *Casper* cases, supra, cases outside Minnesota, all proceed on the theory that when the certificate is converted, so are the shares.

The conversion thus took place in New York and plaintiff is barred. A separate order has been entered.