CHARLES W. BERRYMAN AND ANOTHER v.
STANLEY A. RIEGERT AND OTHERS.
M. B. HAGEN REALTY COMPANY, APPELLANT.

175 N. W. (2d) 438.

March 6, 1970—No. 41828.

---

*Vesely, Otto & Miller* and *K. Maxfield Otto,* for appellant.
*John D. Flanery,* for respondents.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Theodore B. Knudson, JJ.

NELSON, JUSTICE.

Appeal from an order of the District Court of Hennepin County denying motions by defendants for judgment notwithstanding the verdict or for a new trial.

The action was commenced by plaintiffs, Charles W. Berryman and Evelyn M. Berryman, his wife, against defendants, Stanley A. Riegert, Robert Miller, M. B. Hagen Realty Company, and Trinity Universal Insurance Company, alleging that Miller, an employee of M. B. Hagen Realty Company and acting as agent for Riegert, made false representations about a home which Riegert had offered for sale, and that in reliance upon such representations plaintiffs were induced to purchase the home and were damaged thereby.

At the close of the testimony, the court granted defendant Riegert's motion for dismissal. Only defendant M. B. Hagen Realty Company, hereinafter designated Hagen, appeals.

The issue on appeal is whether the verdict for plaintiffs is supported by the evidence.

If all conflicts in the evidence are resolved in favor of the prevailing parties below, the facts appear to be as follows: On June 24, 1965, Stanley A. Riegert listed his Eden Prairie home for sale with Hagen. The area in which the home was located had neither sanitary nor storm sewer drainage. Immediately to the rear of the Riegert lot is a 10-foot drainage easement running between said lot and the neighboring lot. The ditch which is the subject of such easement serves to drain the immediate area and other

larger residential areas of surface waters. All of the surface water running through the drainage ditch is carried into a nearby lake through a culvert under an adjoining street. The culvert was plugged in the fall of 1965 and replaced with another culvert by the village of Eden Prairie sometime after October 20, 1965. There is evidence that in the summer and fall of 1965, the lake rose to within 20 feet of the roadway under which the culvert was constructed.

Riegert purchased his home in July 1960 at the time it was built. On two occasions after torrential rains in the fall of 1963, he experienced water in his basement. Gutters were installed on the house and no further water problems appear to have occurred as long as the Riegerts occupied the house.

Prior to the listing of the house with Hagen, defendant Robert Miller and 17 other salesmen from the company viewed the premises, both inside and outside, for purposes of valuation. The salesmen knew at the time of the viewing that the area has neither sanitary nor storm sewers and that each owner would have to rely on his separate sewer and water systems.

On September 15, 1965, the Berrymans met with Miller, and after Mr. Berryman informed Miller that he did not want to purchase anything with a water problem, the parties went on a tour of the various homes Hagen had for sale. Miller was asked on cross-examination, "Isn't it true that you started to drive into one driveway with the Berrymans in your car, and Mr. Berryman said, 'I don't want to look at that one, it's low, and it looks like I could have water problems in the garage'?" Miller said that he did not know, but he did not deny that Berryman could have made the statement. The parties eventually viewed the Riegert home. The home was located on the highest part of the lot, considerably higher than the surrounding property, and the lot tapered off toward the adjoining lot. At that time, the corner of the adjoining lot was 1 to 4 feet lower than the opposite corner of the Riegert lot.

The Berrymans and Miller then inspected the inside and outside of the Riegert home. Although it was raining on the date of viewing and had been raining for 2 weeks prior thereto, there was no evidence of water in the basement nor around the outside of the premises. Miller testified that on none of the occasions upon which he was present at the Riegert home did he observe any evidence of water or moisture in the basement or of standing water on any of the property.

After the premises had been viewed, Miller stated to the Berrymans, "You can see for yourself that it is a high and dry lot." Berryman testified that while he was inspecting the rear of the property he made the statement to Miller, "The lot appears to be a nice, sloping lot with no water problems." Miller confirmed the content of this statement and replied, "After the rains we have had here, if there is no water here now, there never should be any."

After signing the purchase agreement, the Berrymans returned to the premises on two occasions prior to the closing date and saw no evidence of water standing on the outside or in the basement.

The Berrymans completed the purchase and moved into the house October 12, 1965. On about October 20, 1965, they experienced water on the basement floor which rose to a point from 1 to 3 inches in depth. Prior to this time, they had noticed that water had appeared in the back yard and had progressively risen to a point where on October 19 it had reached a foot in depth on one part of the yard.

Berryman testified that the presence of the water had reduced the value of the house from $17,750—the purchase price of the home—to $14,750. Prior to the purchase, an appraiser for the Veterans Administration appraised the home at $17,750.

There was also evidence adduced at trial that between September 15, 1965, the date the Berrymans signed the purchase agreement, and October 12, 1965, the date the Berrymans first occupied the home, the adjoining neighbors raised the level of their

property in the back yard from a position 1 to 4 feet below the Riegert-Berryman property to a point 1 1/2 to 2 feet above it.

During the 5 years the Riegerts had occupied the property from 1960 to the fall of 1965, they had on occasion experienced ponding in the rear of their property as a result of the annual spring thaws. Standing water would also occur for a few hours after torrential rains. The record also indicates that Riegert joined with several other neighbors in the spring and summer of 1965 to rent a pump which would alleviate the problem of ponding on the property located immediately to the south of Riegert's lot.

■ The rule governing recovery on the basis of fraud requires the plaintiff to show that defendant made a false representation of a past or existing material fact, susceptible of knowledge, knowing it to be false or without knowing whether it was true or false, with the intention of inducing the person to whom it was made to act in reliance upon it or under such circumstances that such person was justified in so acting and was thereby deceived or induced to so act to his damage. Belisle v. Southdale Realty Co. 283 Minn. 537, 168 N. W. (2d) 361; Cady v. Bush, 283 Minn. 105, 166 N. W. (2d) 358; Swanson v. Domning, 251 Minn. 110, 86 N. W. (2d) 716; 8A Dunnell, Dig. (3 ed.) § 3818.

■ We pointed out in Swanson v. Domning, *supra*, that an intent to deceive is not necessary, nor is it necessary to prove that the defendant knew the representations were false. We stated there (251 Minn. 115, 86 N. W. [2d] 720):

"Fraudulent intent may be proved by showing that the party knew his statements to be false; or that, having no knowledge of their truth or falsity, he did not believe them to be true; or that, having no knowledge of their truth or falsity, he yet represented them to be true of his own knowledge.

\* \* \* \* \*

"\* \* \* It is not necessary that the statement be recklessly or carelessly made. It makes no difference how it is made if it is

made as an affirmation of which defendant has knowledge and it is in fact untrue. The right of recovery * * * is based on the fact that such statement, being untrue in fact, relied upon by the other party in entering into the transaction, has resulted in the loss to him which he should not be required to bear."

It is also the rule, however, that a representation of expectation as to future acts or events is not sufficient to sustain a charge of fraud merely because the represented act or event did not occur. In order to amount to actionable fraud, a representation must be material as to a past or existing fact and not merely as to a future event. See, Belisle v. Southdale Realty Co. *supra;* Cady v. Bush, *supra;* Bakke v. Keller, 220 Minn. 383, 19 N. W. (2d) 803; 8A Dunnell, Dig. (3 ed.) § 3827, note 45.

■ Applying the foregoing principles to the facts in this case, we conclude that there was sufficient evidence for the jury to find that plaintiffs were induced to make the purchase through the fraudulent representations of defendants.

As aptly stated in the trial court's memorandum:

"* * * [I]t should be concluded that a water problem in the basement of a home was a material consideration and was of great importance and concern to the plaintiffs. They informed Miller that they would not consider purchasing a home with a water problem. It may be true that Miller did not actually know that there had been water seepage in the home or that there had been a water problem in the neighborhood either from surface flow or seepage. Those facts were nevertheless susceptible of knowledge by Miller. It would seem that such information should be available to an experienced real estate broker, who should know his merchandise."

See, also, Sawyer v. Tildahl, 275 Minn. 457, 148 N. W. (2d) 131.

Defendants contend that statements made by Miller concerning any alleged water conditions were mere commendations of the property sought to be sold, commonly known as "seller statements" or "puffing," and also that the Berrymans' independent

investigation of the property precluded the reliance by plaintiffs which is a necessary element of actionable fraud.

We reach the conclusion however that Miller's representations went beyond mere "dealer's talk" or "puffing." This issue involves the relationship of the parties. The parties were not on an equal footing. Defendants had superior knowledge or at least the opportunity for knowledge of the problems which might be encountered in the purchase of the Riegert home. Because of plaintiffs' inexperience in this field, they had a right to rely upon the representations of defendants. See, Hollerman v. F. H. Peavey & Co. 269 Minn. 221, 130 N. W. (2d) 535; Swanson v. Domning, *supra*.

■ In City of Coon Rapids v. Suburban Engineering, Inc. 283 Minn. 151, 156, 167 N. W. (2d) 493, 496, we quoted from Rother v. Hiniker, 208 Minn. 405, 407, 294 N. W. 644, 646:

"Civil actions require proof of fraud by a fair preponderance of the evidence. Dowden v. Kanuch, 158 Minn. 75, 196 N. W. 819. If there is a misrepresentation but the purchaser, instead of relying upon it, makes an independent examination and acts upon the result thereof without regard to the misrepresentations, there is no cause of action. See Meland v. Youngberg, 124 Minn. 446, 145 N. W. 167, 170, Ann. Cas. 1915B, 775. But 'this court * * * has held that, if the buyer, instead of investigating as fully as he might, made only a partial investigation, and relied in part upon such investigation and in part upon the representations of the adverse party, and was deceived by such representations to his injury, he may maintain an action for such deceit.' Id. p. 454; Schmidt v. Thompson, 140 Minn. 180, 184, 167 N. W. 543. It is sufficient if the representation, although not the sole cause, constituted 'one of several inducements and had a material influence upon the plaintiff.' See Old Colony L. Ins. Co. v. Moeglein, 165 Minn. 117, 119, 205 N. W. 885, 886."

An independent investigation without more may suggest, but does not establish, nonreliance. It is sufficient if the defendant's

representations substantially and materially induced the purchase. See, Goldfine v. Johnson, 208 Minn. 449, 294 N. W. 459. Since the question of reliance is ordinarily for the jury, they could find that the cursory investigation by the Berrymans did not preclude them from establishing the elements of fraud.

We conclude that the evidence, viewed as a whole, supports the verdict for plaintiffs. The jury's award of damages was not excessive.

Affirmed.