James E. **KLAPMEIER** et al., Plaintiffs,

v.

**PEAT, MARWICK, MITCHELL & CO.,**
Defendant.

No. 5–72 Civ. 26.

United States District Court,
D. Minnesota,
Fifth Division.

Sept. 6, 1973.

Rider, Bennett, Egan, Johnson & Arundel, by Stuart W. Rider, Jr., Minneapolis, Minn., for plaintiffs.

Gray, Plant, Mooty & Anderson, by Robert E. Bowen, and Lloyd V. Anderson, Jr., Minneapolis, Minn., for defendant.

NEVILLE, District Judge.

### FACTS

Plaintiff Klapmeier and others have brought this action against defendant Peat, Marwick, Mitchell & Co. (Peat, Marwick), a firm of independent certified public accountants, alleging that certain financial reports of Telecheck International, Inc. (TCI) prepared by defendant contained false and misleading information and omissions. Plaintiffs claim they were induced by reports certified by Peat, Marwick including TCI's 1968 annual report into selling their corporation through a stock transfer. In an earlier action plaintiffs received a favorable jury verdict resulting in a judgment in this court in the amount of $857,632 against TCI based on these stock transactions. TCI having since taken refuge under Chapter XI of the Bankruptcy Act, plaintiffs now seek to recover that judgment, among other damages, against Peat, Marwick. It appears that TCI had used Peat, Marwick as its accountant during the relevant period.

The claims in this action originally were brought under various sections of both the Securities Act of 1933 and the Securities Exchange Act of 1934 and under common law fraud principles. However, plaintiffs' memorandum in opposition to defendant's motion to dismiss indicates the 1933 Act claims and some 1934 Act claims will not be pursued. (Received March 5, 1973, at pp. 8–9.)

Both parties, in brief, have addressed themselves solely to the 1934 Act claim based on Section 10(b), 15 U.S.C. § 78j(b), and Rule 10b-5. 17 CFR 240.10(b)-5. Peat, Marwick now moves for dismissal of the common law fraud and 10b-5 claims arguing that the applicable statute of limitations has run. If these claims were to be dismissed it would terminate the entire action.

The difficulty is that Section 10(b) of the 1934 Act contains no statute of limitations. This omission probably was not an oversight since at the time the Act was passed there was little indication that the courts would imply a private cause of action based upon it. But this has occurred and has received Supreme Court endorsement. Superintendent of Ins. v. Bankers Life & Casualty Co., 404 U.S. 6, 13 n. 9, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971); cf. Affiliated Ute Citizens v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972).

■ When dealing with federal legislation which does not contain a statute of limitations the course is clear; this court must apply the limitation period of the forum state. Both Supreme Court and Eighth Circuit precedent is unequivocal. International Union, United Automobile Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966); Cope v. Anderson, Receiver, 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947); Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946); Vanderboom v. Sexton, 422 F.2d 1233 (8th Cir. 1970). Defendants have put forth a forceful argument backed by an array of distinguished commentators that a better approach would be to apply the statute of limitations found in the federal securities laws for sections other than 10(b).[1]

These authorities argue that Congress, in dealing with the Securities laws, uniformly has provided for a one-three year statute of limitations when it has specifically created a private cause of action. Thus, where the courts have implied a private cause of action the reasonable statute of limitations should be that which Congress has ordained for other securities violations. Schulman, Statutes of Limitation in 10b-5 Actions: Complication Added to Confusion, 13

Wayne L.Rev. 635, 656–58 (1967). Adoption of the federal statute of limitations would provide uniformity for these actions throughout the country. And there is an argument that when the original Supreme Court precedents on the question were decided there were no closely analogous federal statutes of limitation which could be applied and thus the state statute was chosen by default to avoid the unfairness of allowing a claim which had no limit upon it. L. Loss, Securities Regulation, VI at 3898–3900 (1969 Supp); Israels, Book Review of A. Bromberg, Securities Laws, 77 Yale L.J. 1585, 1591–92 (1968). Finally, several Supreme Court justices have opined that simply looking for an applicable state statute of limitations may not be the best way to implement federal policy and have cautioned against placing undue weight upon Congressional silence on the issue. McAllister v. Magnolia Petroleum Co., 357 U.S. 221, 228–229, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958) (Brennan, J. concurring); United Automobile Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 709, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966) (White, J. in dissent).

Although these arguments have merit, it is not for this court to ignore controlling precedent. Either Congress or the Supreme Court may respond favorably to the proposal. But presently the law is clear.[2] It is noteworthy that the United Auto Workers v. Hoosier Cardinal case was decided in 1966. The *Vanderboom* case was decided in 1970. Certainly the United States Supreme Court was, and is, aware that choosing state statutes of limitations will create varying lengths of life for federal claims depending upon which forum is looked to and which of its statutes of limitations is chosen. Although these cases may lead to the application of a longer statute of limitations

---

1. This period is one year from the time of discovery of the violation, but in no event more than three years from the date of the wrong. *E. g.*, 15 U.S.C. § 77m (Section 13 of the 1933 Act) and 15 U.S.C. § 78r (Section 18 of the 1934 Act).

2. No court as yet has adopted the position these commentators suggest. Dudley v. S. E. Factor & Finance Corp., 57 F.R.D. 177, 182 n. 1 (N.D.Ga.1972).

where the cause of action is judicially created than where it is created by Congress the lack of uniformity, both within the securities acts, and geographically across the country[3] is not a strong enough rationale for ignoring such clear precedent.

Since the statute of limitations of the forum, here Minnesota, must be used the really difficult question is squarely put: which of Minnesota's several statutes of limitations should apply? The parties have presented several suggestions, both parties basing their arguments on the *Vanderboom* case.

■ "The basic standard for determining which of the various local periods of limitation to utilize is that it should be 'one which best effectuates the federal policy at issue.' " Vanderboom v. Sexton, *supra*, 422 F.2d at 1237 quoting Charney v. Thomas, 372 F.2d 97, 100 (6th Cir. 1967). In the Vanderboom decision the court adopted a statute of limitations found in the Arkansas Securities Act, and stated that it was "the proper statute of limitations to apply since it deals expressly with the sale of securities." Vanderboom v. Sexton, *supra*, 422 F.2d at 1237. In Minnesota the statute of limitations in the Securities Act is Minn.Stat. § 80.26 (1969). However, the Minnesota Securities Act does not contain a substantive provision which is close to the Eighth Circuit definition of Rule 10b–5 as the Arkansas Act did.[4] Moreover, the major reason why the *Vanderboom* court rejected the Arkansas fraud limitations statute was that Arkansas required scienter in fraud cases and the Eighth Circuit has elimi-

nated this element from 10b–5 cases. Similarly Minnesota does not require scienter in fraud cases. Swanson v. Domning, 251 Minn. 110, 86 N.W.2d 716 (1957); Hollerman v. F. H. Peavey & Co., 269 Minn. 221, 130 N.W.2d 534 (1964); Swedeen v. Swedeen, 270 Minn. 491, 134 N.W.2d 871 (1965). Thus the major reason for failing to choose the fraud limitations statute in *Vanderboom* does not apply in Minnesota.

The only parts of Minn.Stat. § 80 which even remotely deal with fraud in the sale of securities simply do not reflect the elements of Rule 10b–5. Minn. Stat. § 80.19 (1968) is entitled "False statements or misleading acts" but does not refer to the purchase or sale of securities but rather refers to false information filed in connection with a registration of securities. In fact the entire thrust of the Minnesota securities regulation is through registration and not by overseeing individual securities sales. Perlman, A Critical Analysis of the Registration Provisions of the Minnesota Securities Act, 56 Minn.L.Rev. 523, 528 (1972).

The only other section which might conceivably apply is Minn.Stat. § 80.37 (1968) entitled "Violations: penalties". This section makes it a felony to sell securities in a fraudulent manner. It does not provide for a private right of action, yet does give specific criminal sanctions. The Minnesota Supreme Court has interpreted this statute to be the basis of a civil action where stock is sold without the required registration, but apparently that is not the situation here. It does not appear from the pleadings that the

3. Limitation periods ranging from one year to ten years have been applied in Section 10(b) cases as a result of differences in the forums selected or in which statute should be used within a particular forum. *E. g.* Denny v. Performance Systems, Inc., (1971–72 Transfer Binder) CCH Fed.Sec.L.Rep. ¶ 93,-387 (M.D.Tenn.1971) (Tennessee ten year general limitation period); Weiser v. Schwartz, 286 F.Supp. 389 (E.D.La.1968) (Louisiana one year fraud statute); Hooper v. Mountain States Securities Corp., 282 F.2d 195 (5th Cir. 1960) (Alabama one year fraud statute).

4. The court stated at 1239:
   In short, common law found in Arkansas apparently requires scienter . . . whereas misrepresentations under Arkansas blue-sky law are actionable if either intentionally or negligently made. In the Eighth Circuit Rule 10b–5 applies to intentional and negligent misrepresentations and, like the Arkansas blue-sky law is specifically aimed at securities fraud.

TCI stock here transferred required registration with the Securities Exchange Commission. In Drees v. Minnesota Petroleum Co., 189 Minn. 608, 250 N.W. 563 (1933), the court found an implied civil action for violation of the registration requirement and allowed a plaintiff to recover the amount paid. Still, the court did not elaborate on the confines of this implied action so it is difficult to compare it with Rule 10b-5 as *Vanderboom* requires.

*Vanderboom* clearly indicates that the statute of limitations which the state uses for securities violations should be given careful consideration in cases such as this one. 422 F.2d at 1237, 1240. Thus, although the securities limitation statute should not apply here because Minnesota does not have a substantive statute paralleling Rule 10b-5, it is instructive to look at the limitation length the state has chosen for securities violations. Under Minn.Stat. § 80.26 (1969) the applicable period of limitations, since the transfer in question took place on May 10, 1969, is "six years after the date on which the securities were delivered to the purchaser pursuant to such sale." It is also instructive to note that a previous federal case which applied the Minnesota Blue Sky law to a stock sale, prior to the enactment of Minn.Stat. § 80.26 [5], chose the six year statute of limitations found in Minn.Stat. § 541.05-(6) [6] because it held the claim was grounded in fraud. Shepard v. City Co. of New York, 24 F.Supp. 682 (D.Minn. 1938) (Bell, J.)

Accordingly, for the period in which this transaction occurred it appears Minnesota policy was to apply a six year statute of limitations in securities cases. However, under the *Vanderboom* test the inquiry is not ended when it is decided which statute the state has applied in securities cases. That is only one factor

for consideration. *Vanderboom* outlined several other factors. Basically, *Vanderboom* requires application of the limitations statute which the forum has provided for the substantive cause of action which most *resembles* Rule 10b-5 as defined in this Circuit.

Defendants have also asserted that Minn.Stat. § 541.07(5) should control. They point out that this statute was broadened in 1953 to include actions for the recovery of damages "accruing under any federal law . . . respecting the payment of . . . damages", and defined damages to include "single, double or treble damages, accorded by any statutory cause of action whatsoever and whether or not the relationship of master and servant exists." Minn.Laws, 1953 c. 378, Section 3. Plaintiff claims that this limitations statute applies only to actions for wages but the wording of the amendment, "whether or not the relationship of master and servant exists", casts doubt on this assertion. However, it is clear that this statute was *primarily* designed to deal with actions for wages. Kohout v. Shakopee Foundry Co., 281 Minn. 401, 403–404, 162 N.W.2d 237 (1968).[7] That court also indicated that the requirement of a statutory basis for the cause of action is most appropriately read to apply to claims for damages and not wages. Although Rule 10b-5 is now the basis for a damage award it is not a statutory damage remedy. Quite the contrary, it is a judicially created private cause of action. Nowhere in Section 10(b) of the Exchange Act or in Rule 10b-5 is there language creating a private cause of action. Although the *Vanderboom* court styled a 10b–5 action as "what might be termed an 'implied federal blue-sky' type of statutory action", 422 F.2d at 1237, the emphasis must be placed on the word "implied" and not the word "statutory". A statutory cause of action is one which a stat-

---

5. Minn.Stat. § 80.26 was first passed in Minn. Laws 1941, c. 547, Sec. 18. *Shepard* was decided in 1938.

6. Actually the predecessor statute to this section was chosen, Minn.Stat. § 9191, but they

are worded identically and the different sections only reflect a renumbering.

7. It should be noted that the *Kohout* Court commented on the lack of clarity in the changes made in the statute.

ute specifically mandates—it is not one which is implied by the courts to accomplish the purposes of an act.

It is noteworthy that Minn.Stat. § 541.07(5) specifically encompasses "fees or penalties" and has been read to be applicable to Sherman Act treble damage claims. General Corporation v. General Motors Corp., 140 F.Supp. 219 (D.Minn. 1956). Rule 10b-5 actions are not in the sense of a penalty—they are intended to make a damaged party whole again—and thus they are quite unlike the specific punitive damages called for by the Sherman Act. The dissimilarity between Rule 10b-5 and the emphasis found in 541.07(5) seems to indicate that statute of limitations should not be applied. This court is forced to conclude that Minn.Stat. § 541.07(5) cannot control a Rule 10b-5 action notwithstanding that it is a short statute of limitations and the *Vanderboom* court indicated a preference for a short statute. The wording of 541.07(5) and the fact that another statute better meets the *Vanderboom* requirements compel this decision.

█ Defendants also assert that as to the non-resident plaintiffs the Minnesota Borrowing Statute, Minn.Stat. § 541.14, should control. This statute requires that if the plaintiff is not a citizen of the state of Minnesota the statute of limitations of the place where a cause of action arose should control in Minnesota. Other than Klapmeier the plaintiffs are not Minnesota citizens. Defendants assert that the cause of action arose in Hawaii, since TCI is located there, the financial statements in issue were written and certified there, and allegedly the substance of the transaction complained of took place in Hawaii. Defendant cites Devine v. Rayette-Faberge, Inc., 285 F.Supp. 1006, 1009 n. 6 (D. Minn.1968), decided by this court, to support this position. The key issue in any Borrowing Statute case, is where did the cause of action arise? There is little Minnesota law on the subject. In interpreting another state's borrowing statute a federal court indicated that where the actual sale was completed is the important inquiry, and where the events constituting the entire transaction occurred is also relevant. Saylor v. Lindsley, 302 F.Supp. 1174, 1180 & n. 13 (S.D.N.Y.1969). This appears to be a reasonable method for defining the place where a cause of action "has arisen". Minn.Stat. § 541.14. Here, it is clear the sale was finalized in Minnesota. The object of the sale is a Minnesota corporation, located in Minnesota and doing business here. Plaintiffs received the TCI 1968 annual reports in Minnesota. Although this court does not decide the question of whether this cause of action may not have *also* arisen in Hawaii it seems indisputable that the cause of action did arise in Minnesota. The *Devine* decision is not inconsistent with this result. In *Devine* the only relationship the transactions had with Minnesota was that the defendant was a Minnesota corporation [8] and a Minnesota bank was *one* of the corporation's transfer agents and was *notified* of a New York stock transfer. There are many more contacts with Minnesota in the present case. Accordingly, Minn.Stat. § 541.14, the Borrowing Statute, does not apply to this case and the court need not inquire into Hawaiian law.

█ The statute which best fulfills the *Vanderboom* resemblance test is propounded by the plaintiff. Minn.Stat. § 541.05(6).[9] It states:

Except where the uniform commercial code otherwise prescribes, the following actions shall be commenced within six years:

· · · · · ·

(6) For relief on the ground of fraud, in which case the cause of action shall not be deemed to have ac-

---

8. The defendant had its principal place of business in New York, not Minnesota.

9. Plaintiffs also assert that Minn.Stat. § 541.05(2) may apply. Since by its terms

it is directed to statutory causes of action it is inapplicable for many of the reasons which made Minn.Stat. § 541.07(5) inapplicable.

crued until the discovery by the aggrieved party of the facts constituting the fraud.

Minnesota's concept of common law fraud is the substantive cause of action which best comports with the Eighth Circuit's definition of Rule 10b-5. Thus Minnesota's fraud statute of limitations should be applied to Rule 10b-5 actions in this state.

In Hanson v. Ford Motor Co., 278 F.2d 586 (8th Cir. 1960), then Judge Blackmun outlined the elements of common law fraud in Minnesota. Following that outline one can see the similarity which a Rule 10b-5 action in this Circuit has with a common law fraud action in Minnesota. 278 F.2d at 591. Under both causes of action there must be a representation and it must be false. Rule 10b-5 specifically refers to omissions and Minnesota cases have extended fraud to silent representations. Thomas v. Murphy, 87 Minn. 358, 91 N.W. 1097 (1902); Humphrey v. Sievers, 137 Minn. 373, 163 N.W. 737 (1917). Both causes of action require a representation dealing with a past or present fact and the fact must be material. In both Minnesota fraud cases and federal 10b-5 cases materiality is broadly defined. Berryman v. Riegert, 286 Minn. 270, 175 N.W.2d 438 (1970); Affiliated Ute Citizens v. United States, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). Notably, under Minnesota fraud case law a false statement as to financial information has been held to be a material fact. Spiess v. Brandt, 230 Minn. 246, 41 N.W. 2d 561 (1950). Of course that is the essence of the complaint in this case.

Other elements of the two causes of action are similar. For instance, both require reliance and it will be presumed in certain instances under either cause of action. *Compare*, List v. Fashion Park, Inc., 340 F.2d 457, 462 (2d Cir.), cert. denied 382 U.S. 811, 86 S.Ct. 23, 15 L.Ed.2d 60 (1965) (defining reliance) with Berryman v. Riegert, *supra*, 286 Minn. at 277–278, 175 N.W.2d at 438 (defining reliance). However, the most important similarity between Minnesota common law fraud and a 10b-5 action in the Eighth Circuit is that neither action requires a showing of scienter. Spiess v. Brandt, *supra*; Swanson v. Domning, 251 Minn. 110, 86 N.W.2d 716 (1957); Hollerman v. F. H. Peavey & Co., 269 Minn. 221, 130 N.W.2d 534 (1964); Helvetia Copper Co. v. Hart-Parr Co., 137 Minn. 321, 163 N.W. 665 (1917); Myzel v. Fields, 386 F.2d 718, 734–735 (8th Cir. 1967), cert. denied 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968); Vanderboom v. Sexton, *supra*. In both jurisdictions as long as the statement is false there need be no inquiry as to the subjective state of mind of the representer. This factor was important to the *Vanderboom* court.

Unlike the fraud statute considered by the court in *Vanderboom* there is no great dissimilarity between Minnesota fraud law and Eighth Circuit 10b-5 law. And there are many similarities. Thus the Minnestota fraud statute of limitations is appropriate here.

In a previous opinion this court intimated its opinion that a six year statute of limitations probably should be applied to 10b-5 actions in Minnesota. Ericksen v. Winnebago Ind., Inc., 342 F.Supp. 1190, 1193 (D.Minn.1972). The *Vanderboom* resemblance test requires this rather long limitations period in Minnesota simply because that is the length this state has chosen for its fraud actions and Rule 10b-5 in the Eighth Circuit closely resembles common law fraud in Minnesota. The *Vanderboom* test basically asks for two requirements: (1) commonality of purpose and (2) lack of defenses. Here the commonality of purpose requirement is met because both causes of action are directed toward remedying fraud. Rule 10b-5(a) specifically addresses itself to fraud. Although *Vanderboom* included in this requirement the fact that a statute of limitations specifically designed to cover securities frauds is preferred, it should be noted that at the time of this transaction the applicable securities statute

of limitations was the same length as Minn.Stat. § 541.05(6): six years.[10] The second requirement is that the defenses to the two substantive causes of action resemble each other. That requirement is most appropriately fulfilled here because lack of scienter is not a defense in either action.[11]

The *Vanderboom* court indicated that because Arkansas fraud law was not as favorable to plaintiffs its statute of limitations should not apply to the more favorable 10b-5 action. However, Minnesota fraud law simply does not allow the same defenses Arkansas fraud law did; thus its statute of limitations should apply. In the context of this case this statute "best effectuates the federal policy at issue." Vanderboom v. Sexton, *supra*, 422 F.2d at 1237.

This court need not address the question of when the statute of limitations commenced running. The action was begun on March 22, 1972 and it is clear that the limitation period could not have elapsed by that time since the annual report at issue was not even written until after 1968. Under any interpretation of when the limitation period should commence, this cause of action is still viable.

It should be noted here that the application of this six year statute of limitations, Minn.Stat. § 541.05(6), also encompasses plaintiffs common law fraud claim pleaded on these same facts. And it is clear that many other courts, in fact the majority of the courts which have entertained the issue, have chosen the fraud statute of limitations.[12] By no means do all the courts which have found the fraud statute of limitations applicable also demand scienter. In Douglass v. Glenn E. Hinton Investments, Inc., 440 F.2d 912 (9th Cir. 1971), the Ninth Circuit held that scienter is not required in 10b-5 actions in that Circuit. It also reaffirmed its use of the general fraud limitations period for 10b-5 cases.

In Charney v. Thomas, 372 F.2d 97 (6th Cir. 1967), the court applied a rather long statute of limitations because it required scienter and thus felt that plaintiffs should be allowed a longer limitation period since their burden of proof was heavier. This does not apply here, and quite the contrary, it can be argued that since the 10b-5 remedy is so liberally construed in the Eighth Circuit a shorter statute of limitations ought to apply. Yet this court must act under the resemblance test as enunciated in *Vanderboom*. That test requires the application of the state statute of limitations which controls the substantive cause of action which most resembles Rule 10b-5 in this Circuit. In Minnesota that is fraud and covered by Minn.Stat. § 541.05(6).

A separate order has been entered.

10. Minn.Stat. § 80.26 requiring a six year limitation period was first enacted in 1946, Minn.Laws 1941, c. 547, Sec. 18. In 1969 the legislature changed the limitation period to three years, Minn.Laws 1969, c. 848, Sec. 10, but the statute applied the shorter period only for transactions in which delivery was made subequent to its effective date, May 29, 1969. The pleadings indicate the transaction at issue was completed prior to that date.

11. If there were a different burden of proof that might be termed a change in defenses, but in Minnesota fraud can be shown through a preponderance of the evidence. Dowden v. Kanuch, 158 Minn. 75, 196 N.W. 819 (1924).

12. Mitchell v. Texas Gulf Sulphur Co., 446 F.2d 90 (10th Cir.), cert. denied, 404 U.S. 1004, 92 S.Ct. 564, 30 L.Ed.2d 558 (1971); Morgan v. Koch, 419 F.2d 993 (7th Cir. 1969); Janigan v. Taylor, 344 F.2d 781 (1st Cir.), cert. denied, 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120 (1965); Fratt v. Robinson, 203 F.2d 627 (9th Cir. 1953); Fischman v. Raytheon Mfg. Co., 188 F.2d 783 (2d Cir. 1951); Stevens v. Abbott, Proctor & Paine, 288 F.Supp. 836 (E.D.Va.1968); Connelly v. Balkwill, 174 F.Supp. 49 (N.D. Ohio 1959), aff'd. *per curiam*, 279 F.2d 685 (6th Cir. 1960); Tobacco & Allied Stocks v. Transamerica Corp., 143 F.Supp. 323 (D.Del. 1956), aff'd. *per curiam*, 244 F.2d 902 (3d Cir. 1957).